■ HARVEY LEVINE et al., Appellants-Respondents, v CARMIN SARBELLO et al., Respondents-Appellants, and CARMELO GIUFFRE et al., Respondents, et al., Defendant. (Matter No. 1.) CARMELO GIUFFRE, Respondent, v CARMIN SARBELLO et al., Appellants. (Matter No. 2.)—(1) In an action, *inter alia,* for specific performance of a contract for the sale of real property, (a) plaintiffs Levine appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Kings County (Hirsch, J.), dated March 30, 1984, as dismissed their complaint with respect to their claim for the return of their down payment; and (b) defendants Sarbello cross-appeal from so much of the same judgment as is in favor of defendants Giuffre and against them in the sum of $25,370 (we treat the notice of appeal and cross notice of appeal as being from the judgment dated March 30, 1984), and (2) in a proceeding pursuant to RPAPL 1921 to discharge a mortgage lien, the Sarbellos appeal from an order of the same court (Levine, J.), dated December 7, 1984, which directed that the mortgage given to them by Carmelo Giuffre be discharged and that Giuffre's debt thereunder be canceled.

Judgment dated March 30, 1984, modified, on the law, by (1) deleting the first decretal paragraph thereof and substituting therefor a provision that the plaintiffs Levine have judgment against the defendants Sarbello in the total sum of $25,400; and (2) deleting the third decretal paragraph thereof and substituting therefor a provision that the defendants Giuffre have judgment against the defendants Sarbello in the total sum of $7,500. As so modified, judgment affirmed, insofar as appealed from, without costs' or disbursements; judgment dated March 21, 1984 is amended accordingly.

Order dated December 7, 1984, affirmed, with one bill of costs to Carmelo Giuffre.

On May 20, 1982, plaintiffs Carole and Harvey Levine entered into a contract with defendants Carmin and Josephine Sarbello to purchase the Sarbellos' Brooklyn home. The purchase price was $254,000 and the contract specified June 30, 1982 as the closing date. The contract did not contain a "time is of the essence" clause.

Pursuant to said contract, the Levines deposited the sum of $25,400, representing the down payment, with the Sarbellos' attorney, defendant Charles Alario. The agreement provided that Alario would hold the check in escrow until the closing of title. The agreement further provided: "If the purchaser wilfully defaults or wilfully fails to carry out any of the provisions of this agreement, the seller can elect to cancel the same, and fifteen (15) days after mailing written notice of such election to the purchaser or his attorney at their last known address, or personal delivery of such notice to the purchaser, this agreement shall become void and of no effect, and the seller shall retain all monies paid thereunder as liquidated damages, the same as if the agreement had never been made, or in the alternative the seller shall have the right to bring any proceeding or action which he may deem necessary to protect his interest, and afforded to him by law."

By letter dated June 28, 1982, two days prior to the scheduled closing, the Levines' attorney contacted Alario and advised him that the Levines would not have the necessary funds to consummate the purchase on June 30, because they had not been able to sell the home they then owned. He requested an adjournment of the closing date until between August 1 and August 15, to permit the Levines the opportunity to secure the necessary funds.

Alario responded that the Sarbellos would only consent to a "reasonable adjournment" of a "couple of weeks" and expressed the opinion that the Levines' request was not a reasonable one. Alario informed the Levines' counsel that he would hold the closing as scheduled.

The Levines recorded the contract of sale on the morning of June 30, but did not appear at the closing. By letter dated June 30, 1982, Alario advised the Levines and their attorney that the Sarbellos had elected to cite the Levines in default and that he, Alario, had released the escrow to the Sarbellos.

Thereafter, the Levines continued to express an interest in purchasing the real estate and there were subsequent discussions and negotiations throughout the summer. In the meantime, Carmelo Giuffre indicated a desire to purchase the property.

On August 9, 1982, the Levines entered into a contract for the sale of their home and claim that they requested their counsel to schedule a closing with the Sarbellos on September 15. Alario testified that a closing date was never requested and that on September 1 the Levines' attorney informed him

that the Levines had canceled the contract for the sale of their home. Alario then contacted the attorney for Mr. Giuffre and agreed to sell the property to his client.

The sale to Mr. Giuffre was consummated at a closing held on September 7, 1982. Mr. Giuffre made a payment of $130,573.79, assumed a first mortgage, and executed a purchase-money mortgage to the Sarbellos in the sum of $93,000. The purchase-money mortgage was made "subject to" an indemnification agreement whereby the Sarbellos agreed to hold the Giuffres "free and harmless of any damages resulting from the recording of Contract of Sale * * * between CARMIN SARBELLO to HARVEY LEVINE and CAROL [sic] LEVINE, to include reasonable attorney fees and any claim for brokerage commissions".

In late January or early February 1983, the Giuffres entered into a contract for the sale of the subject premises to different buyers. By summons and complaint dated March 15, 1983, the Levines commenced the instant action, inter alia, for specific performance and filed a lis pendens against the realty.

In June or July 1983, the Giuffres canceled the contract for sale of the realty. Mr. Giuffre then requested that the Sarbellos compensate him for his loss pursuant to the contract of indemnity. When the Sarbellos refused to comply, Mr. Giuffre ceased making mortgage payments.

Judgment was entered in the action for specific performance in favor of the Sarbellos and the Giuffres. Mr. Giuffre offered to satisfy the mortgage at a closing at which he intended to convey the premises. Mr. Alario, the Sarbellos' attorney, disputed the amount due and owing, contending, inter alia, that Mr. Giuffre was obligated to pay the 18% penalty interest rate for his default in making the scheduled payments. Mr. Alario appeared at the closing but refused to accept Mr. Giuffre's tender of payment at the 14% interest rate.

Mr. Giuffre subsequently commenced the instant proceeding to discharge the mortgage lien, which motion was granted upon the condition that Giuffre deposit into court the amount due and owing with interest accrued at 14%.

Initially, we must determine whether the Levines are entitled to the return of their down payment.

We begin with the premise, accepted by the Levines and Sarbellos, that the contract they entered into did not make time of the essence. It is a well-settled rule of law that where a contract for the sale of real property does not provide that time is of the essence, both the vendor and the purchaser are

entitled to a reasonable adjournment beyond the closing date to perform the contract (*see,* 62 NY Jur, Vendor and Purchaser, § 37; 1 Warren's Weed, New York Real Property, Adjournments §§ 2.01, 2.05 [4th ed]; *Willard v Mercer,* 58 NY2d 840; *Schoen v Grossman,* 33 Misc 2d 490, *appeal dismissed* 17 AD2d 778). In order to convert their non-time-of-the-essence agreement into a time-of-the-essence agreement, the Sarbellos had to properly notify the Levines of their intention. As one treatise puts it, "[w]hile the mere designation of a date on which title is to be closed does not result in making that date of the essence of the contract, the vendor may thereafter by proper notice bind the vendee to complete his obligation within a reasonable time to be specified in such notice" (62 NY Jur, Vendor and Purchaser, § 39). We have held that "proper notice" means that the party seeking to establish the firm closing date must serve "clear, unequivocal notice to that effect" (*4200 Ave. K Realty Corp. v 4200 Realty Co.,* 89 AD2d 978, 979). Hence, before the Sarbellos could declare a default for nonperformance of the contract of sale, i.e., for not closing on time, they were required to serve a legally sufficient notice upon the Levines. This they did not do. Rather, on the same day designated in the contract (June 30, 1982), Mr. Alario sent a letter to the Levines notifying them that "because you failed to appear and tender the balance of the purchase price, [my clients] * * * elect * * * to cite you in default and in breach of your agreement with them dated the 20th day of May, 1982". Thus, in one fell swoop the Sarbellos purported to unilaterally make time of the essence, notified the Levines of that fact and declared them to be in default. Inasmuch as the Levines were not in default on June 30, 1982, Mr. Alario's letter was of no legal significance whatsoever. Stated otherwise, absent proper notice to the Levines, the declaration of default made on behalf of the Sarbellos was a nullity. As the Levines were not in default on June 30, 1982, the Sarbellos are not entitled to retain the $24,500 down payment on that ground.

Were we not reversing on the above ground we would, nevertheless, hold that the Sarbellos are estopped from asserting that the Levines were in default on June 30, 1982 by their conduct in continuing to negotiate the sale of the real property to the Levines during the summer of 1982. That is, even if it is assumed that the Levines were somehow in default of the parties' agreement by not appearing at the June 30, 1982 "closing", the record shows that the Sarbellos dealt with the Levines as if their contract of sale remained in full force and

effect. Having dealt with their vendees in such a manner, the Sarbellos could not, without warning, declare a forfeiture or suddenly maintain that the Levines' earlier conduct constituted a default (*see generally,* 62 NY Jur, Vendor and Purchaser, §§ 128, 132). As indicated above, it was during the course of said "postclosing" negotiations that the Sarbellos went to contract with Giuffre. At that point the Sarbellos could no longer perform under the earlier contract and, as a result, they are not permitted to retain the Levines' down payment (*see, e.g., Cohen v A.F.A. Realty Corp.,* 250 NY 262; *see also,* 62 NY Jur, Vendor and Purchaser, § 161). Consequently, so much of the judgment as denied the Levines' claim for the return of their down payment is reversed and said plaintiffs are entitled to enter judgment against the Sarbellos in the total sum of $25,400.

With respect to their cross appeal, the Sarbellos claim that the Giuffres cannot recover any damages pursuant to their indemnity contract. That claim is premised upon the argument that the Giuffres were not damaged by the Levines' recording of their contract. Rather, the Sarbellos argue that any damage resulted from the filing of the lis pendens, which instrument was not mentioned in the indemnity agreement. We disagree with that contention. The indemnity agreement between the Sarbellos as sellers and the Giuffres provided as follows: "The purchasers agree to accept title to said premises with exception 'M', issued in title report made by the Title Guarantee Company and Pioneer National Title Insurance Company, under their report number AC-8200314, and in consideration thereof, the sellers will hold the purchasers free and harmless of any damages resulting from the recording of Contract of Sale, dated the 20th day of May, 1982, and recorded on the 30th day of June, 1982, in Reel 1323 Page 28, between CARMIN SARBELLO to HARVEY LEVINE and CAROL [*sic*] LEVINE, to include reasonable attorney fees and any claim for brokerage commissions".

The title report exception referred to the May 20, 1982 contract of sale between the Levines and the Sarbellos. Quite obviously, the parties to the contract intended that the Sarbellos would indemnify the Giuffres in the event the Levines attempted to enforce the recorded contract of sale. The indemnification agreement was given in order to induce Mr. Giuffre to accept title to the realty despite the refusal of the title insurer to insure against damages arising from the recordation of the earlier contract of sale. The Levines' complaint sought, *inter alia,* specific performance of the recorded con-

tract of sale. Therefore, the lawsuit comes within the purview of the indemnification agreement. While Trial Term was justified in finding the Sarbellos liable pursuant to the indemnity agreement, it erred in awarding damages for mortgage payments made and for lost interest on Mr. Giuffre's initial investment. The only damages sustained by the Giuffres which can be attributed to the Levine lawsuit are attorney's fees. In light of the activities detailed by their counsel in the record before us we find that the sum of $7,500 represents a reasonable amount for attorney's fees incurred by the Giuffres as a result of the Levine-Sarbello lawsuit. Mollen, P. J., Thompson, Niehoff and Rubin, JJ., concur.