■ EXCLUSIVE ENVELOPE CORP., Respondent, v TAL-SPONS CORP. et al., Appellants. (Matter No. 1.) In the Matter of TAL-SPONS CORP., Appellant, v EXCLUSIVE ENVELOPE CORP., Respondent. (Matter No. 2.)—In consolidated matters, *inter alia,* for specific performance of a contract for the sale of realty and for an accounting, the defendants in Matter No. 1 appeal from (1) an order of the Supreme Court, Queens County (Hentel, J.), dated May 18, 1990, which denied their motion pursuant to CPLR 4404 (b) to set aside the court's decision dated April 5, 1990, and (2) a judgment of the same court (Hentel, J.), dated May 21, 1990, which is in favor of Exclusive Envelope Corp. and against them directing specific performance of the contract and requiring, *inter alia,* that Exclusive Envelope Corp. pay the appellants the sum of $486,686.69.

Ordered that the appeal from the order dated May 18, 1990, is dismissed; and it is further,

Ordered that the judgment is modified, by deleting the provision thereof which directed Exclusive Envelope Corp. to pay the appellants the sum of $486,686.69; as so modified, the judgment is affirmed; and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith; and it is further,

Ordered that the respondent is awarded one bill of costs.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

Pursuant to the contract entered into between the parties, Exclusive Envelope Corp. had two separate and distinct purchasing options, one involving the use of bonds issued by the New York City Industrial Development Agency (hereinafter the IDA) and the other being an all-cash sale. The paragraph setting forth the IDA bond option specified that the "[p]urchaser shall have one hundred eighty (180) days to obtain IDA approval and commitments to purchase bonds". In contrast, the paragraph containing the all-cash purchase option contained no 180-day limit. Furthermore, the contract stipulated that closing would occur "no later than 1/31/83". Although

the 180-day period for obtaining IDA financing began to run on the contract date of February 4, 1982, it is clear that the appellants' contention that the contract terminated 180 days after February 4, 1982, is without merit. The clear language of the agreement demonstrated that only the IDA financing option was subject to this time limitation. Furthermore, the appellants' assertion that the contract's closing date of January 31, 1983, was made of the essence by the above-quoted language is without merit (see, O'Connell v Clear Holding Co., 126 AD2d 530; 4200 Ave. K Realty Corp. v 4200 Realty Co., 123 AD2d 419). Prior to asserting a claim of default the appellants were required to serve a clear, distinct, and unequivocal notice demanding performance, fixing a reasonable time in which to do so, and warning that failure to close on that date would be considered a default (see, Karamatzanis v Cohen, 181 AD2d 618; Zahl v Greenfield, 162 AD2d 449; Sohayegh v Oberlander, 155 AD2d 436, 438).

The trial court's finding that Exclusive Envelope Corp. would have been ready, willing, and able to close on an all-cash basis within a reasonable time after the nonfirm closing date of January 31, 1983, was based upon a fair interpretation of the evidence presented, and this finding should not be disturbed (see, Gonzalez v Chalpin, 159 AD2d 553; cf., Huntington Min. Holdings v Cottontail Plaza, 60 NY2d 997; see also, 96 NY Jur 2d, Specific Performance, § 24). However, the trial court improperly failed to take into account the amounts expended by the appellants as carrying costs for the property during its wrongful retention, since Exclusive Envelope Corp. occupied the premises during that period (see, 4200 Ave. K Realty Corp. v 4200 Realty Co., supra, at 421). We therefore remit this action to the trial court for a recalculation of the amounts payable to the appellants by Exclusive Envelope Corp., at which time the appellants will be permitted to present documentary evidence of the amounts in question. We note that at the trial Exclusive Envelope Corp. itself offered expert testimony tending to prove that the carrying costs in question would have amounted to some $1,450,000 (see, Freidus v Eisenberg, 71 NY2d 981). Mangano, P. J., Eiber, Ritter and Santucci, JJ., concur.