■ BRUM REALTY, INC., Plaintiff, v HOWARD M. TAKEDA et al., Defendants. (Action No. 1.) J. MAX INTERNATIONAL CORP., Respondent, v MASATO TAKEDA et al., Appellants. (Action No. 2.) [613 NYS2d 372] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered September 10, 1993, which denied defendants' motion for summary judgment in the second consolidated action while granting plaintiff's cross motion for summary judgment in that action, unanimously modified, on the law, to deny the cross motion as well, and otherwise affirmed, without costs.

J. Max International Corp. ("JMI"), plaintiff-respondent in consolidated Action No. 2, contracted to purchase a parcel of Manhattan realty from defendants-appellants Takeda for $2.3 million. The terms called for a down payment of $100,000 to be held in escrow by the sellers' attorney, defendant-appellant Brothers, with closing set for June 19, 1992. Standard provisions in the contract called for the Takedas to furnish insurable title, and gave them the right to adjourn the closing for 90 days in order to clear any clouds on insurability or marketability.

On June 16, 1992, Brum Realty came forward with a complaint in Action No. 1, asserting that it was also a prospective buyer of the property in question. Brum's complaint alleged that in 1991 it had employed as real estate brokers one Sam Suzuki and his mother, and the latter's employer, The Corcoran Group, to negotiate a purchase of the same parcel of realty from the Takedas for $1.5 million. Suzuki left Brum's employ after these negotiations failed to bear fruit, but allegedly took Brum's records with him and thereafter conspired with the Takedas to purchase the property from them for his personal use or profit, through an entity denominated for purpose of the litigation as "XYZ Corp." (although

in reality the reference was to JMI). Brum's lawsuit sought, *inter alia,* to impress "a trust upon the contract of sale" between the Takedas and XYZ Corp. Attorney Brothers immediately notified his contracting counterpart, the attorney for JMI, that he considered the Brum lawsuit frivolous and intended to move forthwith in that action for dismissal of the lis pendens.

Meanwhile, the original closing date had already been adjourned sine die, at JMI's attorney's behest, due to the unavailability of one of JMI's principals who had suffered a serious injury overseas, and by stipulation the closing was tentatively re-calendared for July 15. In so doing, Brothers noted his clients' reservation of their contractual right to the 90 additional days to remove title encumbrances, should that become necessary. But now that the shoe was on the other foot, JMI's attorney replied with a terse confirmation of July 15 as the closing date, with "[t]ime being of the essence." Brothers objected to that date being of the essence, in light of his reservation of—and probable need for—up to 90 additional days to clear title, and the fact July 15 had merely been an accommodation date for JMI's earlier adjournment sine die. When JMI's attorney now insisted on the July 15 closing date, despite its obvious impossibility, Brothers began to suspect the genuineness of the purchaser's interest in the transaction.

On July 22, Brum Realty entered into a stipulation in its lawsuit to cancel the lis pendens against the property, but "without prejudice to plaintiff's right to re-file after transfer of the property by" the Takedas. When JMI's attorney saw this stipulation, he immediately filed a new title exception (numbered 16), to preserve the demand that clearance of title include Brum Realty's reserved right to pursue title into the hands of JMI after sale by the Takedas. Citing Exception 16 as an insurmountable obstacle to insurable title, JMI demanded return of its down payment on July 23. Brothers went ahead and scheduled a closing for August 27, but JMI's attorney rejected such a closing as a sham, in light of the unsatisfied Exception 16, and again demanded return of the down payment, bringing suit for same (Action No. 2) in September. That action was consolidated with the Brum Realty lawsuit in November 1992.

JMI's attorney's unilateral declaration of time being of the essence was unjustified, under the circumstances. In an action at equity for specific performance of a contract for the sale of real estate, time of performance is not normally of the essence unless the contract so provides or at least one of the parties

has so declared upon proper notice *(Schmidt v Reed,* 132 NY 108; *Lang v Blumenthal,* 203 AD2d 252). The same rule holds true in an action at law to recover a down payment *(see, Willard v Mercer,* 58 NY2d 840). Even where an executory contract fixes a time of performance as arguably of the essence, if the date so fixed is subsequently waived, the party causing the waiver cannot later claim a default on account of such delay without demonstrating the necessity of performance within a reasonable period of time *(see, GDJS Corp. v 917 Props.,* 99 AD2d 998, 999).

JMI's demand for return of the down payment based upon a cloud (Exception 16) on insurable title effectively preempted the Takedas' contractual option for 90 days in which to clear such title *(see, Maxton Bldrs. v Lo Galbo,* 68 NY2d 373). This peremptory denial of the sellers' opportunity to cure constituted an anticipatory repudiation of the contract by the prospective buyer *(see, Cohen v Kranz,* 12 NY2d 242), especially in light of the latter's knowledge that the cloud on title could not possibly have been cured within the period insisted upon by JMI's attorney *(Klein v Opert,* 201 AD2d 705). Rather than declaring a breach at that point, or formally electing the 90-day adjournment, Brothers set a new closing date 43 days hence, in the hope of convincing JMI to withdraw from its anticipatory breach. It thus became a question of fact whether the ultimate failure to close was due to the Takedas' attempt to force the purchaser's acceptance of uninsurable title, or to JMI's insistence on an unreasonable period of time for the sellers to remove the cloud on title. Under the circumstances, neither party was entitled to summary judgment. Concur— Murphy, P. J., Rosenberger, Wallach, Ross and Rubin, JJ.