[857 NE2d 513, 824 NYS2d 192]

ADC Orange, Inc., Appellant, v Coyote Acres, Inc., Respondent.

Argued September 12, 2006; decided October 19, 2006

## POINTS OF COUNSEL

*Powers & Santola, LLP,* Albany (*Michael J. Hutter* of counsel), and *Tarshis, Catania, Liberth, Mahon & Milligram, PLLC,* Newburgh, for appellant. I. Coyote Acres, Inc. wrongfully repudiated the contract when ADC Orange, Inc.'s contractually obligated second payment was made 11 days after it was purportedly due, as time was not of the essence for such payment. (*Grace v Nappa,* 46 NY2d 560; *Kulanski v Celia Homes,* 7 AD2d 1006; *Blanchard v Archer,* 93 App Div 459; *Chung-Li Chou v Main St. Assoc.,* 208 AD2d 670; *Sohayegh v Oberlander,* 155 AD2d 436; *Savitsky v Sukenik,* 240 AD2d 557; *4200 Ave. K Realty Corp. v 4200 Realty Co.,* 123 AD2d 419; *Poteralski v Colombe,* 84 AD2d 887; *Maxton Bldrs. v Lo Galbo,* 68 NY2d 373; *Lawrence v Miller,* 86 NY 131.) II. Coyote Acres, Inc. may not argue that ADC Orange, Inc. was not ready, willing and able to obtain subdivision approval, as its conduct frustrated and hindered ADC's ability to obtain the approval, or, alternatively Coyote waived that condition. (*Klein v Opert,* 218 AD2d 784; *Whitney v Perry,* 208 AD2d 1025; *Higgins*

*v Eagleton,* 155 NY 466; *Madison Invs. v Cohoes Assoc.,* 176 AD2d 1021; *Huntington Min. Holdings v Cottontail Plaza,* 60 NY2d 997; *Stawski v Epstein,* 67 AD2d 681; *Amies v Wesnofske,* 255 NY 156; *Young v Hunter,* 6 NY 203; *Lieberman Props. v Braunstein,* 134 AD2d 55; *McKenna v Case,* 123 AD2d 517.)

*Joseph J. Haspel, PLLC,* Goshen (*Joseph J. Haspel* of counsel), and *Errol Blank,* West Nyack, for respondent. I. The Second Department's order should be affirmed because ADC Orange, Inc. breached the agreement by failing to make the agreed payment, and there is no recognized basis under New York law for relieving ADC of that preclosing obligation. (*Grace v Nappa,* 46 NY2d 560; *Willard v Mercer,* 58 NY2d 840; *Maxton Bldrs. v Lo Galbo,* 68 NY2d 373; *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.,* 86 NY2d 685; *Whitney v Perry,* 208 AD2d 1025; *Exclusive Envelope Corp. v Tal-Spons Corp.,* 187 AD2d 556; *Swezey v Marra,* 143 AD2d 827; *Poteralski v Colombe,* 84 AD2d 887; *Savitsky v Sukenik,* 240 AD2d 557; *Baltic v Rossi,* 289 AD2d 430.) II. The Second Department's order granting Coyote Acres, Inc.'s summary judgment motion dismissing ADC Orange, Inc.'s specific performance claim should be affirmed because ADC failed to demonstrate that there were triable issues of fact with respect to its inability to demonstrate that it was ready, willing and able to perform under the agreement. (*Lamanna v Wing Yuen Realty,* 283 AD2d 165; *Goewey v Delta D & I Corp.,* 175 AD2d 299; *Oak Bee Corp. v Blankman & Co.,* 154 AD2d 3; *S.J.E. Realty Corp. v Lantz,* 154 AD2d 523; *Norgate Homes v Central State Bank,* 82 AD2d 849; *Shandler v Bauz,* 121 AD2d 619; *Lieberman Props. v Braunstein,* 134 AD2d 55; *Louis Bonavita & Sons v Quarry,* 126 AD2d 707; *Savino v DeLeyer,* 160 AD2d 989.)

### OPINION OF THE COURT

ROSENBLATT, J.

This case involves a contract for the sale of land. The buyer seeks specific performance; the seller has kept the down payment, claiming the buyer breached the contract. Pursuant to the contract, the buyer was obligated to make an interim payment of $250,000 by a particular date. Because the buyer made the payment two weeks late, the outcome of the appeal turns in part on whether, in connection with that obligation, time was "of the essence." We hold that in contracts of this type, time of performance is not normally of the essence unless the contract so states or one of the parties has unequivocally declared it upon proper notice.

ADC Orange, Inc. as buyer and Coyote Acres, Inc. as seller entered into a contract in December 2000 for the sale of a parcel of property in the Town of Wallkill, Orange County for $600,000. As required by the contract, ADC made a down payment of $100,000, which Coyote's attorney held in escrow. The agreement contained a condition requiring ADC to obtain subdivision and site plan approval from the town planning board for the construction of at least 25 "residence dwellings upon the Premises and such approvals being received no later than June 30, 2002." Coyote in turn agreed to execute authorizations required for the approvals.

A rider provided that ADC was entitled to a return of the $100,000 down payment if, despite good faith and due diligence, it failed to obtain the approvals. The rider further provided—of pivotal importance here—that ADC make an interim payment of $250,000 "[u]pon the later of the preliminary approval having been received from the applicable authorities for the subdivision or December 31, 2001 but in no event later than December 31, 2001." ADC was to pay the balance on filing the final approval and subdivision map. The contract contained no time-of-the-essence clause and did not provide that ADC's failure to make the interim payment by December 31, 2001 would put it in default.

When Coyote signed the contract, it did not have title to the property. In fact, it did not obtain title until July 12, 2001, some seven months later. Beginning June 22, 2001, the attorneys for the parties corresponded with one another. Writing to Coyote, ADC expressed concern that it would not be able to proceed with its application for subdivision approval in time to appear at a scheduled planning board meeting if it did not immediately receive authorization from the property owner. If ADC did not receive the requested authorization, counsel wrote, "the Contract will be deferred accordingly."

Coyote replied that written authorization had been sent to ADC's agents "some time ago." In a June 27, 2001 letter to Coyote, however, ADC insisted that it had still not received written authorization and that "all of the time frames within the contract are suspended until [it] has received the written authorization from the current landowner." That day, Coyote faxed the current owner's authorization to ADC. On December 26, 2001, Coyote's attorney sent ADC a fax reminding ADC "that the contract of sale in the above matter requires an additional deposit of $250,000 to be made no later than December

31, 2001." "I look forward," he continued, "to my timely receipt of such deposit."

By a December 31 fax, ADC's counsel acknowledged the reminder and said that his principal was out of the country but would transfer the funds "upon his return on January 14, 2002." Coyote did not immediately respond to this proposal; its counsel was also away. On January 10, 2002, however, an attorney who was of counsel to Coyote's law firm wrote to ADC's attorney informing him that Coyote considered ADC in default. ADC's attorney responded the next day, enclosing a $250,000 check and insisting that the delay caused by his principal being out of the country did not constitute a default under the contract, inasmuch as it contained no time-of-the-essence provision. Over the next several months, the parties entered into negotiations by which Coyote would drop its objections to the timeliness of the payment if ADC agreed to some changes in the contract. The negotiations stalled and on March 13, 2002, Coyote declared ADC in default and returned the $250,000 check.

On April 10, 2002 ADC brought this action seeking specific performance of the contract. The following month, however, Coyote agreed to forgo its objections to the late payment in exchange for ADC's consent to certain contractual changes. On June 5, 2002, ADC secured preliminary subdivision approval from the town planning board. It would be a year, however, before final approval was granted. The parties exchanged drafts of the amended contract in June 2002, but negotiations again broke down and this litigation ensued.

In answer to ADC's complaint for specific performance, Coyote sought dismissal and raised two affirmative defenses. First, Coyote claimed that ADC breached the contract by its late payment of the $250,000, resulting in its default. This default, Coyote asserted, entitled it to keep the $100,000 down payment, which it sought by counterclaim. Second, Coyote asserted that the contract had been terminated when ADC failed to obtain final subdivision approval by June 30, 2002, and that if it were to return the down payment, Coyote would have no further obligation to ADC.

Both moved for summary judgment. Holding that Coyote improperly repudiated the contract, Supreme Court granted ADC's motion and ordered specific performance. The Appellate Division reversed, ruling that ADC's late payment constituted a

material breach of the contract, entitling Coyote to keep the down payment. The Appellate Division additionally stated that ADC was not entitled to specific performance because Coyote had made a prima facie showing that ADC was not ready, willing and able to secure subdivision and site plan approval. ADC, the Court ruled, failed to raise a triable issue of fact on its claim that it could not obtain the approvals because of Coyote's recalcitrance.

We modify and hold that ADC did not materially breach the contract by its late payment, and that there are triable issues of fact as to whether Coyote hindered ADC in its ability to perform.

## Time of the Essence

The question whether ADC's late installment payment constitutes a material breach depends on whether time was of the essence with respect to that payment. Unless it was, ADC had a reasonable time in which to tender performance after the specified date of December 31, 2001 (*see Grace v Nappa*, 46 NY2d 560, 565 [1979]).

*Grace* stands for the proposition that in contracts of this kind, time is not ordinarily of the essence unless the agreement so provides (*see also Brum Realty v Takeda*, 205 AD2d 365 [1st Dept 1994]; *Savitsky v Sukenik*, 240 AD2d 557 [2d Dept 1997]). Here, the contract obligated ADC to pay $250,000 "in no event later than December 31, 2001." That language alone does not make time of the essence. As we have long held, "the mere designation of a particular date upon which a thing is to be done does not result in making that date the essence of the contract" (*Ballen v Potter*, 251 NY 224, 228 [1929]).

We agree with *Whitney v Perry* (208 AD2d 1025 [3d Dept 1994]), in which the Appellate Division held that the very same phrase "in no event later than" is not sufficient to make time of the essence in connection with a closing date (*see also Exclusive Envelope Corp. v Tal-Spons Corp.*, 187 AD2d 556, 557 [2d Dept 1992]; *Lightle v Becker*, 18 AD3d 449, 450 [2d Dept 2005]). We see no reason why the same rule should not apply under these facts, with respect to the installment payment (*see e.g. 41-41 51st St. Realty Assoc. v Tura Assoc.*, 207 AD2d 524, 525 [2d Dept 1994]).

Although the most effective way for a party to make time of the essence is to say so in the contract, we recognize that there may be circumstances in which a party would be justified in

making time of the essence even though it was not articulated in the agreement. In *Levine v Sarbello* (67 NY2d 780 [1986], *affg* 112 AD2d 197, 200 [2d Dept 1985]), we acknowledged that it is possible for the seller to convert a non-time-of-the-essence contract into one making time of the essence by giving the buyer "clear, unequivocal notice" and a reasonable time to perform. The Court concluded, however, that the seller's abrupt notification purporting to make time of the essence—coupled with a simultaneous declaration of default—was a nullity (*see also Zev v Merman*, 134 AD2d 555 [2d Dept 1987], *affd* 73 NY2d 781 [1988]; *Dwyer v Villanova*, 129 AD2d 763 [2d Dept 1987]).

Here, Coyote's declaration of default was similarly ineffective. The contract did not contain a time-of-the-essence provision nor did Coyote's December 26, 2001 fax put ADC on notice that its failure to pay on December 31 (as opposed to two weeks later) would amount to a default and the forfeiture of a $100,000 down payment. Accordingly, we conclude that ADC did not commit a material breach of the contract and is entitled to a return of its down payment.

### Specific Performance

■ On this record, ADC is not entitled to specific performance as a matter of law. To obtain specific performance, it was necessary for ADC to show that it was ready, willing and able to fulfill its contractual obligations (*Huntington Min. Holdings v Cottontail Plaza*, 60 NY2d 997, 998 [1983]; *Cipriano v Glen Cove Lodge #1458, B.P.O.E.*, 1 NY3d 53 [2003]). Coyote argues, correctly we conclude, that ADC failed to carry this burden in that it had not obtained final subdivision approval by June 30, 2002.

But neither is Coyote entitled to a dismissal of ADC's claim for specific performance. ADC claims that Coyote frustrated its ability to obtain final subdivision approval. If Coyote was to blame for ADC's failure, Coyote has no cause to charge ADC with it. "[A] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition" (*Kooleraire Serv. & Installation Corp. v Board of Educ. of City of N.Y.*, 28 NY2d 101, 106 [1971]). On this record, the question cannot be decided either way as a matter of law.

Undisputedly, Coyote did not acquire title to the property until July 12, 2001, long after the contract was signed. ADC claims that Coyote had given oral assurances that it would

acquire title very soon after the contract was signed. Whether this is so and whether any delay on Coyote's part affected the speed with which ADC could get subdivision approval are questions of fact. Further, in the spring of 2002, after Coyote declared ADC in default and returned the check, the stalled negotiations—and Coyote's alleged recalcitrance—may have slowed the approval process. Whether that is so and whether Coyote is to blame for it are questions of fact.

In sum, we hold that Coyote must return the down payment to ADC and that ADC's claim for specific performance raises questions of fact requiring a trial.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified, without costs, by remitting the case to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and R.S. SMITH concur; Judge PIGOTT taking no part.

Order, insofar as appealed from, modified, etc.