LEVINE, J.
 

 The issue presented in this case is whether the deadline for seeking a post-closing purchase price adjustment was material to the contract. We find that the deadline was not material to the contract, as time was not of the essence. We, therefore, reverse the ruling of the trial court.
 

 Appellee was appointed assignee and charged with liquidating the assets of Eagle International Group, an insolvent corporation. The parties entered into an asset purchase agreement and escrow agreement. Appellant paid $800,000 upfront, less certain expenses, for Eagle’s assets. Appellant placed an additional $400,000 in an escrow account. From the escrowed monies, appellant could seek an adjustment in the purchase price if the purchased assets “underperformed.”
 

 Section 2.07 of the purchase agreement outlined how appellant could seek an adjustment in the purchase price:
 

 Within 45 days after the end of the Measurement Period (the last day of the Measurement Period is referred to herein as the
 
 “Measurement Date
 
 ”), the Purchaser shall deliver to the Assignee a proposed statement (the
 
 “Proposed, Statement
 
 ”) that sets forth the Purchaser’s determination of the Measurement Period Actual Revenues.... The As-signee shall have the right, exercisable within 15 days following its receipt of the Proposed Statement, to deliver to the Purchaser a detailed statement (a
 
 “Proposed Statement Challenge
 
 ”) describing all of its objections (if any) thereto including a reasonably detailed explanation of such objections. If the Purchaser has not received a Proposed Statement Challenge within 15 days following the receipt by the Assignee of the Proposed Statement, the Assignee shall be deemed for all intents and purposes to have accepted and agreed in full to the Proposed Statement. If, however, the Purchaser shall have received a Proposed Statement, there shall be no Purchase Price Adjustment in respect of the Measurement Period until resolution of the disagreement between the Assign-ee and the Purchaser in accordance with
 
 Section 2.08
 
 hereof, and the Escrow Agent shall make no disbursement of the Escrow Fund until such dispute has been resolved.... [I]f the Purchaser
 
 *1099
 
 shall fail to deliver to the Assignee, the Seller or the Assignee the Proposed Statement within 45 days after the Measurement Date, then the Assignee shall have the right in its sole discretion to declare that the Measurement Period Actual Revenues have exceeded the Measurement Period Target Revenues, which declaration shall be final and binding upon the Purchaser and the Escrow Agent.
 

 “Measurement Period” was defined as “the last full calendar month immediately preceding the first anniversary of the Closing Date. For example, if the Closing Date is September 15, 2008 then the Measurement Period shall be the entire calendar month of August 2009.”
 

 The closing date for the purchase of assets was September 12, 2008, with the measurement period being the calendar month of August 2009. Forty-five days after the end of the measurement period was October 15, 2009. By this date, appellant was to deliver to appellee the “proposed statement” which would set forth the actual revenues for the measurement period. Appellant did not send a letter claiming that revenues were less than target revenues until November 6, 2009. Appellant claimed entitlement to all of the $400,000 funds in escrow, since revenues were less than projected, and the difference between the actual revenues and target revenues exceeded the amount held in escrow.
 

 In response, appellee sent appellant a letter dated November 12, 2009, seeking to exercise its “sole discretion” under section 2.07 to “declare that the Measurement Period Actual Revenues have exceeded the Measurement Period Target Revenues” due to the fact that appellant failed to “deliver ... the Proposed Statement within 45 days after the Measurement Date.”
 

 Thereafter, appellee filed a complaint against appellant seeking a declaratory judgment as to who was entitled to the funds held in escrow. Appellant filed an answer and a counterclaim, also seeking a declaratory judgment that appellant was entitled to the disputed funds held in escrow. The trial court found appellee rightfully entitled to the $400,000 held in escrow. This appeal ensues.
 

 “The interpretation of a written contract is a question of law” and the appellate court construes the contract “under a
 
 de novo
 
 standard of review.”
 
 Gilman Yacht Sales, Inc. v. FMB Invs., Inc.,
 
 766 So.2d 294, 296 (Fla. 4th DCA 2000).
 

 In this case, the main point of contention lies within the fact that appellant failed to meet the October 15 deadline, and instead sent the notification letter, asserting that the revenue figures failed to meet the established targets, twenty-two days later on November 6.
 

 Thus, this case revolves on whether time was of the essence and what result best supports the intent of the parties, as determined by the language of the contract. If time is not of the essence then the parties would have a “reasonable time in which to tender performance after the specified date.”
 
 ADC Orange, Inc. v. Coyote Acres, Inc.,
 
 7 N.Y.3d 484, 824 N.Y.S.2d 192, 857 N.E.2d 513, 516 (2006).
 

 The law is clear that generally time is considered to be of the essence where an agreement specifies, or where such may be determined from the nature of the subject matter of the contract, or where treating time as nonessential would produce a hardship, or where notice has been given to the defaulting party requiring that the contract be performed within a stated time, which must be a reasonable time according to the circumstances.
 

 
 *1100
 

 Sublime, Inc. v. Boardman’s Inc.,
 
 849 So.2d 470, 471 (Fla. 4th DCA 2003). Where one claims that time is an essential provision, the party is “bound, before he can support such a claim, to serve a clear, distinct and unequivocal notice fixing a reasonable time within which the thing must be done.”
 
 Ballen v. Potter,
 
 251 N.Y. 224, 167 N.E. 424, 425 (1929). Placing in the contract “the mere designation of a particular date upon which a thing is to be done does not result in making that date the essence of the contract.”
 
 Id. See also Nippon Life Ins. Co. of Am. v. One Source Mgmt., Ltd.,
 
 2011 WL 1782089 (Ohio Ct. App. May 6, 2011) (finding that time was not of the essence, even though agreement set forth specific date for performance, absent a showing that a reasonable delay would have constituted a material breach or that appellant suffered a significant injury due to delay in performance);
 
 Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,
 
 420 F.3d 1146, 1151 (11th Cir.2005) (stating that failure to make a payment on time does not constitute per se a material breach of contract; rather, to constitute a material breach, late payment must occur where time is of the essence);
 
 ADC,
 
 824 N.Y.S.2d 192, 857 N.E.2d at 516 (finding that an interim payment made two weeks late did not constitute a breach of contract because the contract did not state that time was of the essence).
 

 In the present case, the contract does not specify that time is of the essence. There was no evidence of hardship in the record due to the delay of twenty-two days in appellant notifying appellee by letter pursuant to section 2.07. Nor was there evidence of any notice given to the alleged defaulting party to perform pursuant to the contractual section within a “reasonable time.” Finally, there is no evidence in the record that the nature of the subject matter would inform the parties that time is of the essence. In this case, the assets had already been purchased, the money was already placed in escrow, and appellee was not prejudiced by appellant’s delay of twenty-two days. The contract contained only a date for performance, which, standing alone, is insufficient to make time of the essence.
 

 In
 
 Atlanta Jet v. Liberty Aircraft Services, LLC,
 
 866 So.2d 148, 150 (Fla. 4th DCA 2004), this court found that the failure to close on a sale by the contractually set closing date of April 15 did not entitle a party to terminate the contract since the “nonperformance” did not “go to the essence of the contract.” This court found that, even though the contract provided for a closing date of April 15,
 

 the Contract did not specify that time was of the essence. Moreover, there were no penalties for delay nor is it apparent that the Purchaser suffered any undue hardship due to the delay. Finally, the Purchaser never gave express notice requesting the contract to be performed within a stated reasonable time. Therefore, we hold that time was not of the essence.
 

 Id.
 
 at 150-51.
 

 We also find
 
 Beeler v. Katz Enterprises (Minnesota), Inc.,
 
 2001 WL 410342 (Minn. Ct.App. Apr. 24, 2001), to be very instructive. In
 
 Beeler,
 
 appellant agreed to pay $42 million for outstanding stock pursuant to a purchase and sale agreement. The price was also subject to post-closing adjustments. Appellant had the right to seek reduction of the purchase price if annual expenses were greater than a set figure. The contract provided that appellant was to supply the calculations within forty-five days of closing, but appellant supplied the calculations thirty-five days late. The trial court found that appellant had waived the right to any reduction in price by “allowing the 45 day deadline to
 
 *1101
 
 pass.”
 
 Id.
 
 at *1. The appellate court concluded that the forty-five day time limit to render calculations was not material to the contract and thus reversed the trial court. “Even if a contract contains a specified date for performance, when the contract does not specify that time is of the essence, a delay will not necessarily invalidate the provision.”
 
 Id.
 
 The contract had no provision stating that time was of the essence, nor did the contract list any consequences for failure to abide by the listed date for submitting calculations. Thus, the appellate court reversed to allow the party to submit the calculations which would essentially reduce the purchase price. Similarly, in the present case with similar facts, appellant should be allowed to submit the calculations demonstrating that the revenues during the measurement period were less than the target numbers, and as such, would result in appellant retaining the monies held in escrow.
 

 Finally, where the terms of a contract are clear and unambiguous, the parties’ intent must be gleaned from the four corners of the document, and in such a situation, the language itself is the best evidence of the parties’ intent, and its plain meaning controls.
 
 Crawford v. Barker,
 
 64 So.3d 1246, 1255 (Fla.2011).
 
 [1]
 
 The contract language demonstrates that the intent of the parties was to allow for an adjustment in the purchase price based on the performance of the assets in order to achieve a more equitable sale price. The contract detailed a process to adjust the purchase price of the assets depending on whether the calculations during the measurement period met the target calculations. If they did not meet the target numbers, appellant would have the right to the monies in escrow. This process would clearly adjust the purchase price of the assets from $1.2 million to the $800,000 already tendered to appellee.
 

 In conclusion, we find that since time was not of the essence in this contract, appellant’s twenty-two day delay in tendering the calculations was not material, and we should give effect to the intent of the parties by considering the calculations as stated in appellant’s letter. We, therefore, reverse and remand for the trial court to enter summary judgment in favor of appellant.
 

 Reversed and remanded.
 

 GROSS and CIKLIN, JJ„ concur.
 

 [1]
 

 . We note that the contract does not expressly address the scenario that occurred in this case. The contract anticipated that either appellant would timely serve its proposed statements or appellee would exercise his rights under the contract to declare that actual revenues exceeded target revenues. The contract does not anticipate a situation where, as here, appellant belatedly served its proposed statements and appellee then attempted to exercise his rights.