# Third District Court of Appeal

## State of Florida

Opinion filed June 24, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-3072
Lower Tribunal No. 08-48505
_____

## Blue Lagoon Development, LLC,

Appellant/Cross-Appellee,

vs.

## Albert Maury and Leon Medical Centers, Inc.,

Appellees/Cross-Appellants.


An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Ronald D. Poltorack (Boca Raton); Bales Sommers & Klein, P.A., Richard M. Bales, Jr., for appellant/cross-appellee.

William L. Richey and Catherine Shannon Christie, for appellees/cross-appellants.

Before SALTER, FERNANDEZ and SCALES, JJ.

PER CURIAM.

This appeal, and the claims in the trial court, relate to a contract for the purchase and sale of a large commercial real estate tract in Miami. Blue Lagoon Development, LLC ("Blue Lagoon," or "seller"), appeals the entry of final summary judgment in favor of appellees/cross-appellants Albert Maury[1] and Leon Medical Centers, Inc. (collectively referred to as "Leon Medical Centers" or "the buyers"). Leon Medical Centers filed a cross-appeal from a prior oral partial summary judgment ruling in favor of Blue Lagoon authorizing Blue Lagoon to pursue the equitable remedy of specific performance (as well as the forfeiture of the buyer's escrowed deposit) if a jury were to find that the buyer breached.

We reverse the final judgment in favor of Leon Medical Centers based upon a plain reading of the purchase contract. We dismiss the cross-appeal because we lack jurisdiction to consider it.

**Factual Background**

Blue Lagoon agreed to sell its property to Leon Medical Centers in late 2007 after exchanging letters of intent and drafts of a purchase and sale agreement. At the end of December 2007, the parties executed a purchase and sale agreement providing for a purchase price of $23,575,000.00. A condition to close the deal was that Blue Lagoon obtain a change in zoning from RU-2 to BU-2 by July 31,

---

[1] Albert Maury is the former trustee of the purchase and sale agreement.

2008. The purchase and sale agreement did not contain a "time is of the essence" provision.

In January of 2008, Blue Lagoon submitted an application for zoning, which later included site plans dated April 11, 2008, and May 14, 2008. The county fire and aviation departments had previously rejected the April plan. The May plan that Blue Lagoon submitted for approval incorporated the correctional changes to the April plan.

Citizens Zoning and Appeals Board 8 ("CZAB8") conducted a zoning hearing on July 16, 2008, and hearing no objection to the change in zoning, approved the application. The record is unclear as to which plan was submitted to the board, but the hearing documents reflect that the April plan was submitted. Blue Lagoon claims that only the May plan was presented at the hearing, and that the May plan was approved. The misunderstanding is reflected in the Resolution and the Declaration of Restrictions CZAB8 approved. Both documents reference the April plan, not the May plan.[2]

The Resolution approving the zoning was certified by a deputy clerk of the Miami-Dade Department of Building and Zoning on July 23, 2008. The Resolution included a description of the plans in three places as "dated stamped

---

[2]  Record evidence in the trial court before the final summary judgment was entered demonstrated that the reference to the applicable plans had been corrected in the resolution and declaration of restrictions without a public hearing.

3

received 4/11/08." Regarding the application presented by Blue Lagoon to CZAB8 for approval, the Resolution recapped the favorable vote and stated that "the same is hereby approved and said property **is hereby zoned accordingly**." (Emphasis provided). The enactment, though subject to a fourteen-day appeal period (expiring August 4, 2008, a Monday), was not appealed. The parties' contract did not specify whether the July 31, 2008, "Proposed Zoning" deadline required that the change be approved by that date, or be "final" (no longer subject to an appeal) by that date.

Meanwhile, Leon Medical Centers closed on another parcel of real property on July 11, 2008, for the same intended use, but for a price approximately $11 million less than its purchase price under the contract with Blue Lagoon. Leon Medical Center's attorney then sent a termination letter to Blue Lagoon on July 31, 2008. Leon Medical Centers claimed to be exercising its right to terminate the contract because it maintained that Blue Lagoon did not obtain the requisite zoning by July 31, 2008, given the possibility of an appeal after that date. As a result, the medical facility that Leon Medical Centers originally was to build on the Blue Lagoon site was instead built on the new parcel.

Blue Lagoon sued Leon Medical Centers for breach of contract, seeking the escrowed deposit, benefit-of-the-bargain damages, and specific performance. Leon Medical Centers filed a counterclaim for return of the deposit.

4

Both parties moved for partial summary judgment on the issue of what remedies would be available to Blue Lagoon if Blue Lagoon prevailed. Blue Lagoon argued that Section 10(A) of the parties' contract allowed it to recover the deposit and benefit-of-the-bargain damages or specific performance, because that section did not expressly exclude those remedies; Leon Medical Centers argued that the contract limited Blue Lagoon's remedy solely to retaining the deposit which Leon Medical Centers had placed in escrow.

Although no written order was entered on the parties' cross-motions for partial summary judgment regarding the remedies available to Blue Lagoon, a review of the transcript discloses that the trial court purported to limit Blue Lagoon's monetary remedy to retaining the deposit, while also allowing Blue Lagoon to pursue the equitable remedy of specific performance and money damages.

The remedies issue was ultimately deemed moot when, in October 2012, a successor trial court judge entered final summary judgment in favor of Leon Medical Centers, determining that Leon Medical Centers' termination of the contract was valid. At the hearing on Leon Medical Centers' motion for final summary judgment, the trial court expressly stated that it was not revisiting the prior judge's determination regarding the remedies available to Blue Lagoon.

Blue Lagoon appealed the trial court's final summary judgment; Leon Medical Centers cross-appealed the trial court's oral partial summary judgment purporting to authorize Blue Lagoon to both retain the escrow deposit and pursue specific performance in the event Blue Lagoon prevails.

**Standard of Review**

The standard of review is de novo.  See Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002); Tropical Glass and Constr. Co. v. Gitlin, 13 So. 3d 156, 158 (Fla. 3d DCA 2009). Summary judgment evidence is to be viewed most favorably to the non-moving party, and the trial court is not free to weigh the evidence.  See Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000).  We review the unambiguous contract terms de novo based on their plain and ordinary meaning.  E. Atl. Realty and Inv. Inc. v. GSOMR LLC, 14 So. 3d 1215, 1219 (Fla. 3d DCA 2009).

**Effective Date of the Change in Zoning**

The contract required the seller to obtain the change in zoning "on or before July 31, 2008 (the 'Outside Date')," but it did not address the prospect or effect of an appeal.  The pertinent dates relating to the rezoning are:

- The applicable zoning authority, CZAB8, approved the rezoning at its meeting of July 16, 2008, and declared that the zoning was changed to BU-2 and  "PASSED AND ADOPTED" as of that date;

- The July 16, 2008, approval by CZAB8 was "posted" (announced to the public as provided by the County Code) on July 21, 2008;

6

- The formal written Resolution of the rezoning approval was certified by the Clerk of the Miami-Dade Department of Building and Zoning on July 23, 2008. The Resolution stated, as already noted, that the application for the change to BU-2 "is hereby approved and said property is hereby zoned accordingly;" and

- The fourteen-day appeal period provided by County Code section 33-312 expired August 4, 2008, and no appeal was filed. Code section 33-312 provides that "Decisions of the Community Zoning Appeals Boards **are final** and may be appealed to circuit court pursuant to section 33-36 [not applicable in this case] provided however within fourteen (14) days, but not thereafter, decisions of the Community Zoning Appeals Boards as specified in Section 33-314 shall be appealed to the Board of County Commissioners." (Emphasis supplied).

Based on these dates, the absence of express contract language requiring that any appeal period have expired before the "Outside Date" of July 31, 2008, and our "time is of the essence" analysis which follows, we conclude that the subject property was rezoned from RU-2 to BU-2 by the local Community Zoning Appeal Board having the power to enact such a rezoning, as of July 16, 2008. The fact that an appeal might have been filed after that is a transparently makeweight argument—because no such appeal was in fact filed and Leon Medical Centers has never attempted to show prejudice flowing from that hypothetical circumstance.[3]

**Was Time of the Essence?**

---

[3] Leon Medical Centers' closing on its lower-price alternative property occurred five days before the CZAB8 hearing on the rezoning relating to the Blue Lagoon property, a point at which it did not know whether the change in zoning would be approved.

Leon Medical Centers argues that, although the agreement did not include an express "time is of the essence" clause, Florida courts have held that the clause does not have to be expressed in situations where a clear and defined deadline or timetable for action or performance has been established between the parties. See Treasure Coast, Inc. v. Ludlum Constr. Co., 760 So. 2d 232, 235 (Fla. 4th DCA 2000) (stating that "[a]lthough the agreement in this case did not contain a 'time is of the essence' clause, the terms in this agreement clearly contained [an] express provision . . . [to be performed by] a specific date"). In that case, however, the issue was a payment deadline under a settlement agreement, the agreement specified a ten-day grace period, and the grace period had expired. No "time is of the essence" provision was necessary, because:

> In the absence of an express agreement otherwise, a debtor owes his creditor nothing less than the unconditional delivery of money on or before the last day specified for payment. See Enriquillo Export & Import, Inc. v. M.B.R. Indus., Inc., 733 So. 2d 1124, 1127 (Fla. 4th DCA 1999).

Id. at 234.

A different analysis is appropriate when the deadline for performance of a non-monetary condition is specified and the contract lacks a "time is of the essence" provision. See Command Sec. Corp. v. Moffa, 84 So. 3d 1097, 1100 (Fla. 4th DCA 2012) (the mere designation of a particular date for performance of such a condition does not make that date the essence of the contract; time is not of

8

the essence, even in an agreement setting forth a specific date for performance, absent a showing that reasonable delay would have constituted a material breach or that the party entitled to performance suffered a significant injury due to the delay in performance).

For all these reasons, the effective date of the change in zoning was an issue of law based on the unambiguous language of the contract, and the final summary judgment in favor of Leon Medical Centers must be reversed.

### Issue of Fact Regarding the Approved Plans

The legal issue pertaining to the effective date of the zoning change does not end the inquiry, however. As an independently-sufficient basis for the reversal of the final summary judgment, the record discloses that the timely zoning change is alleged to have been at risk or defective because of the error in the designation of the applicable site plans in the Resolution and the Declaration of Restrictions. Leon Medical Centers alleged, and its expert supported the allegation with an affidavit, that the discrepancy jeopardized the effectiveness of the zoning change, thereby making the pre-July 31 compliance illusory.

Blue Lagoon and its expert filed summary judgment evidence in opposition, asserting that the discrepancy was at worst a scrivener's error that could be (and later was) corrected without a public hearing or revocation of the zoning change. On the state of the present record, this conflicting evidence creates a genuine issue

9

of material fact regarding the viability of the zoning change following the approval by CZAB8.[4]  For that reason as well, the final summary judgment must be reversed and remanded for further proceedings.  Sierra, 767 So. 2d at 524.

### Cross-appeal Regarding Remedies

Leon Medical Centers filed and served a cross-appeal from the trial court's verbal ruling granting Blue Lagoon a partial summary judgment on the issue of available remedies.  The trial court, having considered the non-reciprocal remedies available to the parties on breach, orally announced to the parties that Blue Lagoon would be permitted to seek specific performance, but not benefit-of-the-bargain damages, in addition to a claim for the escrowed deposit.  The contract provisions specified:

10. **Default.**

> A.  If Buyer breaches this Agreement, then Seller, [sic] shall keep all deposit monies and interest earned thereon held by the Escrow Agent and Escrow Agent shall pay such sums over to Seller pursuant to the procedure provided in the Escrow Terms.

---

[4] Some of the competing expert testimony provided by the parties includes legal opinions that invade the province of the trial court.  See Gyongyosi v. Miller, 80 So. 3d 1070, 1075 (Fla. 4th DCA 2012); Consol. Mut. Ins. Co. v. Ramy, 238 So. 2d 431 (Fla. 3d DCA 1970).  Other parts of that expert testimony, however, appear to touch on matters of practice within the Miami-Dade Department of Building and Zoning, and on the effect of the discrepancy in identification of the approved plans (May versus April) on the buyer's ability to use the property as intended post-closing.  On the current record, these appear to present questions of fact for the jury.

B. If Seller breaches this Agreement, Buyer may terminate this Agreement and thereupon shall at its option either be entitled to the immediate return of all deposit monies and the interest thereon or proceed to seek specific performance **as its sole and exclusive remedies and relief hereunder.**

(Emphasis provided).[5]

We lack jurisdiction to consider the cross-appeal, however, as it was not reduced to a written order. <u>Bisson v. de Arellano</u>, 909 So. 2d 917, 918 (Fla. 3d DCA 2005); <u>Rivera v. Dade County</u>, 485 So. 2d 17 (Fla. 3d DCA 1986).

## Conclusion

We reverse the final judgment in the main appeal, and we dismiss the cross-appeal for lack of jurisdiction. We remand the case for further proceedings not inconsistent with this opinion. [6]

---

[5] The oral pronouncement regarding the remedy issue was based on the use of the word "shall" in Section 10(A) of the final contract and the deletion of the phrase "and thereafter, seller may seek any and all remedies provided by law" from a draft of that section.

[6] The parties have raised additional arguments and issues that do not merit extended discussion.