■ AMALGAMATED BANK, Appellant, v FORT TRYON TOWER SPE LLC et al., Respondents, et al., Defendants. [35 NYS3d 14]—

Order and judgment (one paper), Supreme Court, New York County (Saliann Scarpulla, J.), entered June 12, 2014, which, insofar as appealed from, denied the motion by plaintiff Amalgamated Bank, as trustee of Longview Ultra I Construction Loan Investment Fund (now known as Longview Ultra Construction Loan Investment Fund), individually and as administrative agent for itself and the other Lenders signatory thereto (Amalgamated), for summary judgment, and granted the cross motion by defendants Fort Tryon Tower SPE LLC and Rutherford Thompson III for summary judgment, unanimously modified, on the law, to deny defendants' cross motion, and otherwise affirmed, without costs.

On June 15, 2007, Amalgamated and co-lender Petra Mortgage Capital Corp. LLC entered into various agreements (collectively, loans or loan agreements) by which they agreed to lend up to $95 million to defendant Fort Tryon Tower SPE LLC. Fort Tryon, in turn, planned to use the funds to develop a luxury condominium building in Washington Heights in Manhattan. The loans were to provide the amounts necessary to fund all costs associated with the project.

The loans were due on June 30, 2009, and Fort Tryon had the option of extending them for up to six months as long as it was not in default. Under the terms of the loan agreements, a failure to pay any portion of the total debt when due constituted an event of default. Defendant Rutherford Thompson III, Fort Tryon's managing director, guaranteed Fort Tryon's obligations.

Amalgamated and Petra agreed together to lend $50 million of the $95 million, and Amalgamated agreed to lend $45 million. Petra was to fund the first $30 million, and Petra and Amalgamated would equally fund the next $40 million. Amalgamated would then fund the last $25 million, if drawn. To receive advances under certain of the loans, Fort Tryon had to provide numerous documents, including architect's certificates, construction manager's certificates, and payment

receipts. Furthermore, all the loan agreements contained various antiwaiver provisions.

On June 18, 2007, Fort Tryon requested, and the lenders advanced, approximately $21 million under the loan. After this first draw request, Fort Tryon submitted requests and received payments approximately every month through September 2008. For each draw request, Fort Tryon would prepare a "pencil" requisition for payment of completed work or other costs associated with the project. Amalgamated's project manager would review the "pencil" requisition and make revisions to it. Fort Tryon would then submit a final draw request with the supporting documentation; if everything was in order, Amalgamated would certify that the loan was in balance and that Fort Tryon had met all requirements for the draw, including no event of default.

After submitting 15 draw requests between July 17, 2007 and September 18, 2008, Fort Tryon submitted draw request No. 16 on or about September 18, 2008, and less than a week later, on or about September 24, 2008, submitted preliminary draw request No. 17. On September 25, 2008, an officer of Amalgamated informed Fort Tryon that it was not advisable to combine draws No. 16 and No. 17 because most of the work was already done on draw No. 16, and that he could turn draw No. 17 around quickly when Fort Tryon sent the necessary supporting documents the next week. On September 30, draw No. 16 was funded. The record, however, contains no evidence that Fort Tryon sent the package for draw No. 17 to Amalgamated; Thompson avers in an affidavit that he did not send the documents because in September 2008, Amalgamated refused to process any further draws.

Meanwhile, before October 15, 2008, certain of Petra's senior executives had informed defendant Thompson that Petra was having financial difficulties and would not be able to continue funding construction draws for the project after draw No. 16. As a result, Petra asked Amalgamated, as trustee of the LongView Ultra Construction Loan Investment Fund (Ultra), to buy Petra out of the loan completely. Amalgamated informed Petra that the Fund would not be interested in buying out Petra's portion of the loan, but that it would ask the Ultra investment committee to consider assuming the future fundings of $20 million.

In meetings of the Ultra investment committee between October 2008 and May 2009, the committee discussed the proposal to assume Petra's funding obligations; however, the committee never made any decision on the matter during that

period. At the meeting of the investment committee held on June 18, 2009, approximately two weeks before the loans' maturity date, the committee decided to place the Fort Tryon loans on a "non-accrual" status and downgrade the loan's risk rating. According to the minutes of the meeting, the committee decided that, because of the state of the economy, the overall project was no longer viable. Two months later, on August 19, 2009, Amalgamated sent a letter to Fort Tryon stating that Fort Tryon was in default because it had failed to pay the loan by the maturity date. Amalgamated also stated that Fort Tryon was in default because, insofar as relevant to this action, Fort Tryon had failed to maintain the required insurance policies and failed to pay taxes on the property—all valid bases for declaring a default under the loan agreements' terms.

In January 2010, Amalgamated commenced this action seeking foreclosure of the mortgages (first cause of action) and a deficiency judgment based on Thompson's guaranties (second cause of action). In an amended answer, Fort Tryon interposed a counterclaim seeking a declaration that the loan was not, in fact, due and payable; that Fort Tryon was not in default; and that Amalgamated was obliged to approve advances for the balance of the loan (first counterclaim). Fort Tryon also interposed a counterclaim seeking a decree of specific performance compelling Amalgamated to provide funding for the remaining balance of the building loan and project loan (second counterclaim). Amalgamated moved for summary judgment on its complaint and for an order dismissing the counterclaims. Defendants cross-moved for summary judgment on their first and second counterclaims and for an order dismissing the complaint.

The IAS court denied Amalgamated's motion for summary judgment and granted defendants' cross motion for summary judgment. In so doing, the court noted that while Fort Tryon provided evidence that it submitted a 17th draw request, it was undisputed that Amalgamated failed to pay it. Thus, the court found, Amalgamated had presented no evidence to contradict Fort Tryon's prima facie showing that it presented enough of a 17th draw request to require Amalgamated to at least move toward a finalization of that request and that Amalgamated failed to do so. For the same reasons, the court granted defendants' cross motion for dismissal of Amalgamated's action.

The IAS court also granted defendants' motion for summary judgment on their first counterclaim for a declaratory judgment on the basis that Amalgamated failed to fund the 17th

request, thus violating its obligation to do so. Finally, the court granted defendants' request for specific performance on the basis that Fort Tryon, at a minimum, initiated the 17th request, and Amalgamated was required to at least move toward a finalization of that request.

Contrary to Amalgamated's claim, defendants raised a triable issue of fact as to whether Amalgamated caused their defaults. To be sure, the record contains no evidence that Fort Tryon sent the package for draw No. 17 even though the officer from Amalgamated apparently told Fort Tryon that he could turn draw No. 17 around quickly when Fort Tryon sent the necessary supporting documents the next week. However, Thompson submitted an affidavit stating that in September 2008, Amalgamated had refused to process any further draws; Amalgamated submitted no affidavit or any other evidence contradicting Thompson's affidavit.

Hence, Thompson's averment could support a conclusion that Amalgamated had wrongfully refused to act on a properly supported preliminary draw request as required under the loan agreements. Thus, according Fort Tryon every favorable inference, there would be no reason for Fort Tryon to make a fruitless effort to submit a package of documents for draw No. 17 (*see ADC Orange, Inc. v Coyote Acres, Inc.*, 7 NY3d 484, 490 [2006] ["(a) party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition" (internal quotation marks omitted)]; *see also Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 185 [1982]).

Amalgamated further contends that the court erred in finding that it had waived the requirement of supporting documentation. This argument is a straw man, as the IAS court did not find that Amalgamated waived the requirements of a draw request, and Fort Tryon has not made that argument. In fact, defendants expressly argue that Fort Tryon never claimed that Amalgamated modified or eliminated the draw request requirements, but rather, that Fort Tryon did its part to start the process for draw request No. 17 and that Amalgamated wrongfully prevented completion of the process.

Nonetheless, for the same reasons as support the IAS court's denial of Amalgamated's motions for summary judgment, we find that the IAS court should also have denied defendants' cross motion to dismiss the complaint and for summary judgment on their first and second counterclaims. The record presents issues of fact as to whether the "pencil" requisition was a properly supported draw request, or, instead, whether the

requisition was inadequately supported with the required background documents and thus did not constitute a valid request. Likewise, given the fact that Amalgamated, not Petra, was the agent and lead lender for the loan, the record presents issues of fact as to whether defendants had a valid basis for failing to submit a completed draw request based on its discussions with Petra.

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Sweeny, J.P., Acosta, Andrias and Moskowitz, JJ.