2018 UT App 40

## THE UTAH COURT OF APPEALS

iDRIVE LOGISTICS LLC,
Appellee,
*v.*
INTEGRACORE LLC,
Appellant.

Amended Opinion[1]
No. 20150857-CA
Filed March 15, 2018

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 130400386

Jeffery S. Williams, Edwin C. Barnes, Aaron D.
Lebenta, and Bryan L. Quick, Attorneys
for Appellant

David R. Parkinson, Christopher B. Sullivan, and
Ronald F. Price, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Amended Opinion, in
which JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

MORTENSEN, Judge:

¶1      iDrive Logistics LLC contracted with IntegraCore LLC to
provide IntegraCore with services designed to optimize its

---

1. This Amended Opinion replaces the Opinion in Case No.
20150857-CA issued on December 7, 2017. Paragraphs 69 and 70
have been revised to specifically address issues IntegraCore
raised in a petition for rehearing, and we hereby grant the
petition to that limited extent. *See* Utah R. App. P. 35(j). The
petition for rehearing is denied in all other respects.

shipping and transportation costs. iDrive sued IntegraCore for breach of the agreement and IntegraCore counterclaimed. Both iDrive and IntegraCore alleged breach of contract and breach of the covenant of good faith and fair dealing. On competing motions for partial summary judgment, the district court concluded that iDrive performed under the contract and IntegraCore did not. Accordingly, the court granted summary judgment in favor of iDrive and denied IntegraCore's motion for summary judgment. IntegraCore, on interlocutory appeal, challenges those decisions. We affirm in part and reverse in part.

## BACKGROUND

¶2     This saga of business contractual dysfunction began when iDrive and IntegraCore entered into a 2009 agreement. Soon thereafter, each claimed the other had breached the agreement and the impasse was resolved by way of a new agreement in 2010. Another dispute arose shortly thereafter that was resolved by yet a third agreement in 2011 (the Agreement)—the subject of this interlocutory appeal. Once again each side claims breach and so the complicated history of the Agreement and the parties' attempts to operate under the Agreement must be understood.

### The Parties

¶3     IntegraCore is a logistics company that provides supply chain management, warehousing, packaging, and distribution services to its clients. iDrive is a consulting firm that uses its industry expertise to help reduce its clients' shipping costs.

### The Lawsuit

¶4     iDrive filed this action in March 2013, alleging, among other things, (1) "IntegraCore failed to flow all significant logistics decisions through iDrive"; (2) "IntegraCore failed to timely provide iDrive with information regarding changes in its arrangements with Carriers"; (3) "IntegraCore failed to

compensate iDrive for changes in its arrangements with Carriers as required by the terms of [the Agreement]"; and (4) "IntegraCore diverted USPS shipments that were required to be made on the iDrive negotiated USPS contract, and instead secretly and without iDrive's knowledge or consent made those shipments using a different USPS contract rate."

¶5    IntegraCore filed an answer and counterclaim in May 2013, raising claims of breach of contract and breach of the implied covenant of good faith and fair dealing based on "iDrive's failure to fulfill its contractual obligations as Vice President . . . of Logistics for IntegraCore and to provide pricing optimization services for IntegraCore."

*The Agreement*

¶6    Even though the parties had experienced significant difficulties, or perhaps because of them, the Agreement provides for substantial entanglement between the two entities. Of note is a requirement in the Agreement that iDrive's president, or another mutually agreed upon person, be appointed as vice president of logistics at IntegraCore. The obligations for iDrive's designee as the vice president of logistics were to spend two days in IntegraCore's operations learning logistics practices; help recruit a director of logistics; provide recommendations for logistics changes; work directly with carriers regarding carrier agreements, services, and changes; conduct two additional visits over the next two quarters after the Agreement was executed; and monitor transportation cost trends.

¶7    The Agreement further outlines the "pricing optimization services" that iDrive contracted to provide to IntegraCore, referred to in the Agreement as CUSTOMER:

> As VP of logistics, iDrive will also manage the contract negotiation/optimization process with Carrier(s), as well as the contract maintenance

> process, on CUSTOMER'S behalf. This process
> includes collecting and analyzing CUSTOMER'S
> current parcel shipping data, pricing and Carrier
> contracts; establishing negotiation parameters with
> the CUSTOMER; issuing Request For Proposals
> (RFP) to the Carriers; collecting and analyzing the
> Carriers' responses to the RFP; negotiating pricing,
> terms and conditions with the Carriers; presenting
> analysis on Carrier proposals to the CUSTOMER.
> Final selection of a Carrier(s) is the CUSTOMER'S
> decision.

Although the final selection of carriers rests with IntegraCore, the Agreement also provides that "[a]ll significant logistics decisions will flow through iDRIVE for review."

¶8   The Agreement also contains a compensation provision, which includes when and how iDrive's compensation was to be calculated and paid:

> iDRIVE shall receive a retainer of two thousand
> one hundred and eighty-five dollars ($2,185) per
> month for seven (7) months beginning February 1,
> 2011. iDRIVE shall receive thirty-eight percent
> (38%) of savings that the CUSTOMER derives from
> iDRIVE'S optimization service. All improvements
> made to any of CUSTOMER's contract(s) with
> Carrier(s) between the signature date on this
> Agreement and the end of the Agreement term are
> considered to be the result of iDRIVE'S
> optimization service. For the purposes of
> calculating savings from iDRIVE'S optimization
> efforts with the Carrier(s), iDRIVE and
> CUSTOMER agree that CUSTOMER'S current
> rates, incentives and terms will be used as the
> benchmark. CUSTOMER'S benchmark data will be
> used as the basis for calculating savings

attributable to iDRIVE'S Pricing Optimization service.

¶9     Compensation is also addressed in two other sections of the Agreement—the "General" section and the "Agreement Term" section. The General section states,

> Savings attributed to iDRIVE'S contract negotiation with the carriers will be determined by comparing incentives currently being offered to CUSTOMER under the contract(s) from the Carrier(s) in effect on the date of this Agreement, less the new incentives achieved from the Carrier(s) after the date hereof and will be calculated based on CUSTOMER'S actual shipping data.

The Agreement Term section states, "Any new Carrier agreement signed by CUSTOMER during a period of 3 years after the execution date of this agreement shall be deemed to be based on iDRIVE's optimization efforts, whether negotiated directly with the Carrier(s) by iDRIVE, CUSTOMER or any other party[.]"[2]

¶10    The Agreement further provides that "iDrive operates as an independent contractor and agent, not as an employee of" IntegraCore. The term of the Agreement is for three years. The Agreement defines the term "carriers" as including United Parcel Service (UPS), Federal Express (FedEx), United States Postal Service (USPS), DHL International (DHL), and "any other identified local, regional, national, or international carriers."

---

2. The compensation provision, "General" provision, and "Agreement Term" provision are worded differently but are materially identical; each section provides that new carrier agreements signed after the execution of the Agreement were to be used to calculate iDrive's commissions.

¶11     The Agreement also contains an integration clause and an exculpatory clause. The integration clause provides:

> This Agreement, including the Attachments hereto and iDRIVE policies referenced herein, constitutes the entire Agreement between iDRIVE and CUSTOMER concerning the subject hereof and supersedes all prior and contemporaneous Agreements between the parties, whether written or oral. This Agreement may not be waived, repealed, altered or amended in whole or in part except by an instrument in writing executed by authorized representatives of each of the parties.

The exculpatory clause provides, in part:

> Notwithstanding anything else in this Agreement or otherwise, iDRIVE will not be liable with respect to any subject matter of this Agreement under any contract, negligence, strict liability or other legal or equitable theory (I) for any amounts or (II) for any punitive, special, incidental or consequential damages or lost data or (III) for costs of procurement of substitute goods, technology or services or (IV) for loss or corruption of data or interruption of use.

*The History of Performance/Non-performance*

¶12     IntegraCore appointed Stephen Chase (iDrive President) as IntegraCore's vice president of logistics. In January 2011, Shaun Rothwell (iDrive CEO), sent Ted Broman (IntegraCore CEO) a resume for Thad Haderlie (Director of Logistics), whom IntegraCore then hired as its director of logistics.

¶13     iDrive President spent two days in meetings at IntegraCore's office in February 2011. Included in those various

meetings were meetings between iDrive President, Director of Logistics, and representatives from UPS and FedEx. Despite the Agreement's requirement that iDrive President make at least two additional visits, he did not visit IntegraCore's office again after the February 2011 meetings. Also in February 2011, iDrive sent a memorandum to IntegraCore analyzing IntegraCore's agreements with UPS and FedEx and outlining strategies for improving IntegraCore's contracts with these carriers.

¶14 Between February 2011 and May 2011, iDrive President communicated with a representative from FedEx and a representative from UPS on multiple occasions. During these communications, iDrive President discussed the respective carriers' contracts with IntegraCore. The FedEx representative indicated to iDrive President that IntegraCore's shipping volumes with FedEx did not merit a change to IntegraCore's agreement with FedEx.

¶15 In May 2011, iDrive President emailed a memorandum to the UPS representative requesting price adjustments and requesting that UPS provide a proposal to change surcharges and discounts offered to IntegraCore. Whether this request constitutes a Request for Proposal (RFP), which the Agreement required iDrive to submit as part of its pricing optimization services, is disputed. The UPS representative testified that she interpreted the email as requesting "incentive changes" rather than an RFP because the request lacked the formality normally present in an RFP.[3] The UPS representative acknowledged that the memorandum indeed requested improvements on UPS pricing for IntegraCore and specifically requested a proposal in response. In June 2011, the UPS representative sent an email to iDrive President informing him that "based upon the

---

3. In contrast, the FedEx representative testified generally about RFPs, saying that an RFP can be very simple and "can come in the form of any mode of communication."

characteristics of [IntegraCore's] business, . . . [UPS] would not be making any changes to their current agreement."

¶16    Around the same time, Director of Logistics requested that iDrive CEO, not iDrive President, be Director of Logistics's point of contact between himself and iDrive. As a result, iDrive CEO had several meetings with Director of Logistics, some of which took place at IntegraCore.[4] Accordingly, iDrive stepped back to allow Director of Logistics to "run point" on those negotiations.

¶17    In July 2011, after Director of Logistics missed a regularly scheduled phone call with iDrive, iDrive President asked Director of Logistics for an in-person meeting between Director of Logistics and an iDrive employee to receive an update on the status of Director of Logistics's progress with UPS and FedEx regarding the requested price adjustments. In October 2011, iDrive President sent another email to Director of Logistics requesting to "catch up" on any progress with UPS and FedEx and offering to help facilitate progress.

¶18    Director of Logistics stated that, in October or November 2011, he informed IntegraCore CEO that he was going to contact UPS and FedEx to see if there were any negotiations occurring on IntegraCore's contracts. The UPS representative testified that, in the "first . . . five or ten days of October," she had a conversation with Director of Logistics in which he asked, "My contract is three years old, c'mon my business has grown

---

4. iDrive President, iDrive CEO, and an iDrive employee also testified that Director of Logistics informed iDrive that he would take the lead in the negotiations with UPS. IntegraCore disputes this fact but, other than making legal arguments and pointing out different dates that the witnesses testified that Director of Logistics made the request, IntegraCore does not point to any facts directly contradicting that the request was made.

substantially, what can you do about that?" Director of Logistics's request resulted in a new UPS contract effective at the end of October 2011. While IntegraCore timely paid iDrive the retainer amount, it did not compensate iDrive for any savings realized under its new UPS contract.

¶19    IntegraCore did not complain to iDrive about its performance in 2011 or 2012. After October 2011, iDrive continued to perform auditing services under the Agreement through July 2013.

¶20    IntegraCore also continued to use iDrive's USPS account to ship packages between October 2011 and August 2013. However, in early 2012, IntegraCore began using a different account operated by Move Method, another shipping broker, to ship items via USPS. IntegraCore did not inform iDrive of its decision to use the Move Method account, nor did IntegraCore CEO believe he needed to involve iDrive to determine which account to use. IntegraCore claims the underlying carrier contract with USPS was unaffected by a change of use of the account. When iDrive CEO asked Director of Logistics about the decreased volumes in USPS shipments, Director of Logistics mischaracterized the situation, telling iDrive CEO that the decrease resulted from customers pulling their USPS volumes from IntegraCore.

*The Partial Summary Judgment Rulings*

¶21    Both parties filed motions for partial summary judgment. iDrive filed a motion for partial summary judgment on its claims of breach of contract and breach of good faith and fair dealing, excluding its claims pertaining to the USPS contracts from its motion. IntegraCore sought summary judgment in its favor on iDrive's motion and also sought summary judgment on iDrive's USPS contract claims. iDrive also moved for partial summary judgment against IntegraCore's breach of contract and breach of good faith and fair dealing counterclaims.

¶22 The district court heard argument and issued its rulings from the bench. Those rulings were memorialized in three orders. When IntegraCore objected to the form of the orders, the district court issued an eleven-page ruling clarifying the court's earlier decisions. In the first order, the district court granted iDrive's motion regarding breach of contract and breach of the covenant of good faith and fair dealing arising from the 2011 UPS Agreement.[5] The district court determined that IntegraCore had breached the Agreement by negotiating and entering into the October 2011 carrier contract with UPS in secret and by failing to remit thirty-eight percent of the savings that had been realized by entering into the new contract. The district court determined that no genuine issues of material fact existed, explaining that the Agreement precludes IntegraCore from entering into any agreement with any carrier without iDrive's knowledge and that IntegraCore did not respond to iDrive's inquiries about IntegraCore's contact with UPS and did not otherwise involve iDrive in the discussions that lead to the new UPS contract. The district court further determined that the Agreement "unambiguously requires [IntegraCore] to pay [iDrive] for 38% of savings achieved with any new carrier agreement entered into during the term of [the Agreement], *regardless* of whether [iDrive] participates in the negotiation of such new agreement." (Emphasis in original.)

¶23 Specifically responding to IntegraCore's assertion that iDrive failed to perform under the Agreement, the district court stated: "[T]he Court finds[6] that as of the date of [IntegraCore's]

---

5. The district court made no distinction and provided no separate analysis between the breach of contract and breach of the covenant of good faith and fair dealing, and therefore we treat them as combined or redundant in this decision.

6. Of course, on summary judgment the district court was not actually making findings of fact from disputed evidence. Any

(continued…)

breaches of contract in October, 2011, iDrive had either performed, or was in the process of performing, as required by the terms of [the Agreement]." The district court further rejected IntegraCore's defense for its nonperformance because the Agreement "did not provide that time was of the essence for performance," that IntegraCore "was . . . obligated to provide notice to [iDrive]" if it "believed that time had expired for [iDrive] to perform," and that IntegraCore "continued to accept [iDrive's] performance . . . long after [IntegraCore] now asserts it had a known excuse for nonperformance." Thus, the district court concluded that IntegraCore's failure to provide notice and its continued acceptance of performance constituted independent bases "to reject IntegraCore's argument of lack of performance."

¶24 In the second order, the district court granted iDrive's motion for partial summary judgment on IntegraCore's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. Incorporating its ruling on iDrive's claim against IntegraCore, the district court concluded that IntegraCore breached the Agreement. The district court further determined, "Under the first to breach rule, [IntegraCore's] breaches of [the Agreement] relieved [iDrive] of further obligations . . . and [IntegraCore's] claims are barred for this independent reason." The court also concluded that, as of October 2011, iDrive had "performed, or was in the process of performing" under the Agreement.

---

(…continued)

dispute of *material* fact would have required the court to deny the summary judgment motion to which the factual dispute pertained. Despite its choice of verb, the district court was merely stating its conclusions as to what the undisputed evidence showed.

¶25 As an independent and alternative basis upon which to grant summary judgment, the district court concluded that "the language in the liability limitation [section of the Agreement] is unambiguous and bars [IntegraCore's] counterclaims for breach of contract and breach of the covenant of good faith and fair dealing."

¶26 Next, in the district court's third order, the court denied IntegraCore's cross-motion for partial summary judgment on iDrive's contract claims, incorporating "the same rationale set forth in the Order Granting [iDrive's] Motion for Partial Summary Judgment Regarding Breach of Contract and Breach of Covenant of Good Faith." Although IntegraCore had expressly raised the issue of iDrive's breach of contract claims related to using an alternative account to facilitate an underlying USPS contract, the district court's order is silent on that issue.

¶27 Finally, the district court issued a ruling on IntegraCore's objection to the form of the orders wherein it also clarified its previous rulings. In that order, the district court made clear that "[t]he question of causation in connection with damages was not ruled on" and that "[c]ausation needs to be proven along with damages at trial." Further, while explaining its interpretation of the word "derives," a term found in the compensation provisions of the Agreement, the court stated, "Since all agreements entered into by IntegraCore are deemed to be the work of iDrive, the Court reads the Agreement as allowing iDrive to collect 38% of savings from all contract improvements *regardless of whether or not iDrive actually performed optimization services*." (Emphasis added.) And explaining its conclusions regarding iDrive's performance of its obligations as IntegraCore's vice president of logistics, the court pointed out that iDrive "made visits" and that "the purposes of the additional visits were fulfilled." As to the USPS account issue the district court stated:

iDrive's claim with respect to USPS damages was not raised as part of its motion for summary judgment. IntegraCore filed a motion for summary judgment incorporating a claim related to USPS. IntegraCore's motion for summary judgment was denied, effectively preserving the issue for future litigation and trial.

¶28    IntegraCore filed a petition for interlocutory appeal from the summary judgment orders and the order on IntegraCore's objection to the form of the summary judgment orders, which we granted.

ISSUES AND STANDARDS OF REVIEW

¶29    The issue before us is whether the district court correctly granted iDrive's motions for partial summary judgment and denied IntegraCore's motion for partial summary judgment. The primary questions presented by this appeal are (1) whether the district court correctly interpreted the Agreement between the parties, refusing to consider external evidence of the parties' intent, and (2) whether disputed material facts exist that preclude summary judgment on the various motions.

¶30    "Questions of contract interpretation which are confined to the language of the contract itself are questions of law, which we review for correctness." *Mellor v. Wasatch Crest Mutual Ins. Co.*, 2009 UT 5, ¶ 7, 201 P.3d 1004. "An appellate court reviews a [district] court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). Summary judgment should be granted only "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a

matter of law." Utah R. Civ. P. 56(a). "[I]t is not true that once both parties move for summary judgment the court is bound to grant it to one side or another." *Diamond T Utah, Inc. v. Travelers Indem. Co.*, 441 P.2d 705, 706 (Utah 1968). "Rather, cross-motions [for summary judgment] may be viewed as involving a contention by each movant that no genuine issue of fact exists under the theory it advances, but not as a concession that no dispute remains under the theory advanced by its adversary." *Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 825 (Utah Ct. App. 1989).

## ANALYSIS

### I. Interpretation of the Agreement

¶31　As a preliminary matter, it is necessary to bring IntegraCore's contentions into focus. IntegraCore frames its appeal by asserting that the district court concluded that iDrive was not required to perform at all under the contract. IntegraCore misapprehends the district court's ruling; the district court did not rule that the Agreement allowed iDrive to do nothing. In actuality, the district court expressly held that iDrive "either performed or was in the process of performing its pricing optimization obligations," and this was the basis of the court's ruling on whether iDrive performed under the contract.[7]

---

7. In its ruling on IntegraCore's objections to the form of its summary judgment orders, the district court listed the questions that IntegraCore submitted and provided clarification on each one. Each time IntegraCore asked for clarification on iDrive's obligations, the court responded that iDrive "had either performed, or was in the process of performing, as required by the terms of [the Agreement]," or that iDrive had "fulfilled its obligations." When directly asked about iDrive's obligations, the

(continued…)

Thus, the district court did not relieve iDrive from any duty to perform.

¶32    Instead, the district court applied a plain-reading analysis to a fully integrated contract. As referenced above, the district court interpreted the compensation clause of the Agreement, which provides:

> iDRIVE shall receive a retainer of two thousand one hundred and eighty-five dollars ($2,185) per month for seven (7) months beginning February 1, 2011. iDrive shall receive thirty-eight percent (38%) of savings that the CUSTOMER derives from iDRIVE'S optimization service. *All improvements made to any of CUSTOMER's contract(s) with Carrier(s) between the signature date on this Agreement and the end of the Agreement term are considered to be the result of iDRIVE'S optimization service.* For the purposes of calculating savings from iDRIVE'S optimization efforts with the Carrier(s), iDRIVE and CUSTOMER agree that CUSTOMER'S current rates, incentives and terms will be used as the benchmark. CUSTOMER'S benchmark data will be used as the basis for calculating savings attributable to iDRIVE'S Pricing Optimization service.

(Emphasis added.)

¶33    The district court focused on two sentences in this provision. The first provides that iDrive will receive thirty-eight percent of "savings" that IntegraCore "derives" from iDrive's

_____

(…continued)
district court never stated that iDrive was under no obligation to perform.

optimization services. Second, in calculating "savings" from iDrive's efforts "[a]ll" improvements to IntegraCore's Carrier contract "are considered to be the result of iDRIVE'S optimization service." The district court construed these provisions to mean that, during the term of the Agreement, if IntegraCore experienced any savings on Carrier contracts, those savings would be deemed to have been derived from iDrive's services whether or not the savings actually were the result of iDrive's efforts.

¶34  While explaining its interpretation of the word "derives," the district court stated, "Since all agreements entered into by IntegraCore are deemed to be the work of iDrive, the Court reads the Agreement as allowing iDrive to collect 38% of savings from all contract improvements *regardless of whether or not iDrive actually performed optimization services*." (Emphasis added.) The district court's explanation of the term "derives" says nothing of iDrive's overall obligations to perform under the Agreement but demonstrates that iDrive's compensation is calculated from all savings during the term of the Agreement, not only savings that are the clear result of iDrive's services. The district court did not thereby relieve iDrive of its duties to perform under the contract, and IntegraCore's insistence on appeal that the district court did so is needlessly distracting. Because the district court did not relieve iDrive of the obligation to perform, we decline to consider IntegraCore's arguments that are premised on that interpretation.[8]

---

8. These arguments are that iDrive owed fiduciary obligations, that the district court should have entertained evidence of the parties' intent for the Agreement, and that the court's interpretation rendered the optimization provisions illusory. IntegraCore incorporates its fiduciary-duties argument elsewhere in its appeal, which we address below. *See infra* ¶¶ 68–70.

¶35    Even so, embedded within IntegraCore's misapprehension of the district court's ruling is the general contention that the Agreement must be understood to mean that iDrive is paid only for contract improvements that it clearly generated through its performance and that we must consider the parties' after-the-fact testimony to understand the intent of the parties. We disagree and see no error in the district court's interpretation of the Agreement.

¶36    "In interpreting a contract, we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 18, 54 P.3d 1139 (omission in original) (brackets, citation, and internal quotation marks omitted). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* ¶ 19 (citation and internal quotation marks omitted). No ambiguity exists where "the language of the contract . . . [is] not susceptible to contrary, tenable interpretations." *See Daines v. Vincent*, 2008 UT 51, ¶ 30, 190 P.3d 1269 (citation and internal quotation marks omitted). "When the existence of a contract and the identity of its parties are not in issue and when the contract provisions are clear and complete, the meaning of the contract can appropriately be resolved by the court on summary judgment." *Morris v. Mountain States Tel. & Tel. Co.*, 658 P.2d 1199, 1201 (Utah 1983).

¶37    Determining which terms fall within the four corners of the contract is a straightforward task when a contract contains an integration clause, as is the case here. As our supreme court explained in *Daines*:

> Consistent with our line of contract analysis cases,
> we first determine whether or not [the contract]
> constitutes    an    integrated    agreement    before

> considering whether the evidence offered by [a party] supports a finding of facial ambiguity.

2008 UT 51, ¶ 22. The *Daines* court further explained that extrinsic evidence "is not admissible on the question of integration where the contract at issue contains a clear integration clause." *Id.* (quoting *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 19, 182 P.3d 326). The Agreement in this case contains a clear integration clause. Thus, any arguments regarding ambiguity are properly limited to the construction of ambiguous terms used in the integrated contract.

¶38 The Agreement imposes obligations on iDrive. These obligations include managing contract negotiations and optimization processes with carriers, performing auditing services, analyzing IntegraCore's shipping data, issuing RFPs to carriers, working with IntegraCore's designee as vice president of logistics and so forth. The Agreement also explains what triggers iDrive's compensation:

> All improvements made to any of CUSTOMER's contract(s) with Carrier(s) between the signature date on this Agreement and the end of the Agreement term are considered to be the result of iDRIVE'S optimization service.

Similar language appears in two other places in the four-page agreement. The "Agreement Term" provision states,

> Any new Carrier agreement signed by CUSTOMER during a period of 3 years after the execution date of this agreement shall be deemed to be based on iDRIVE's optimization efforts, whether negotiated directly with the Carrier(s) by iDRIVE, CUSTOMER or any other party.

The "General" provision term states,

> Savings attributed to iDRIVE'S contract negotiation with the carriers will be determined by comparing incentives currently being offered to CUSTOMER under the contract(s) from the Carrier(s) in effect on the date of this Agreement, less the new incentives achieved from the Carrier(s) after the date hereof.

The Agreement could not be more clear; during the Agreement term, no matter how a new carrier agreement came into being that new carrier agreement's existence would be "deemed" and/or "considered" the result of iDrive's services. In retrospect these provisions appear quite prescient.

¶39    IntegraCore fails to show how iDrive's obligations and the payment terms under the Agreement are incompatible or ambiguous, which would necessitate the analysis of evidence outside of the four corners of the document. IntegraCore's argument ignores the scenario where iDrive does perform its obligations and IntegraCore still finds its way into a new carrier contract without iDrive's involvement. Under that scenario, the Agreement unambiguously provides, in multiple provisions, that iDrive will be paid for that contract improvement. Likewise, the fact that a surprise carrier contract is considered "the result of iDRIVE'S optimization service" does not itself mean that iDrive can shirk its duty to perform; IntegraCore could challenge iDrive's right to commissions if iDrive signed the Agreement, went AWOL for the contract term, and subsequently claimed a right to commissions on new carrier contracts created during the term of the Agreement. IntegraCore's interpretation effectively changes multiple key terms of the Agreement that are otherwise internally consistent and therefore is not a "tenable" interpretation. *See Daines*, 2008 UT 51, ¶ 30 (citation and internal quotation marks omitted).

¶40    Instead of highlighting an actual contractual ambiguity, IntegraCore argues that this interpretation is at odds with the

intentions of the parties as reflected by their after-the-fact testimony. However, as explained above, *supra* ¶ 37, where the court is faced with an integrated document, IntegraCore's arguments about extrinsic evidence are limited to construing contractual ambiguity. Consequently, having determined that there is no contractual ambiguity within the four corners of the Agreement, evidence of the parties' intentions otherwise is simply irrelevant.

¶41    In light of the plain language of the Agreement, we see no error in the district court's interpretation.

## II. Partial Summary Judgment Rulings

¶42    We now turn to the district court's other partial summary judgment determinations.

¶43    "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). Whether a party performed under a contract or breached a contract is a question of fact. *See Saunders v. Sharp*, 793 P.2d 927, 930–31 (Utah Ct. App. 1990), *remanded on other grounds*, 806 P.2d 198 (Utah 1991) (per curiam). We view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). Our supreme court has explained,

> In determining whether a factual dispute exists, we apply an objective standard. The objective standard asks whether reasonable jurors, properly instructed, would be able to come to only one conclusion, or if they might come to different conclusions, thereby making summary judgment inappropriate. But where there could be no reasonable difference of opinion on a question of

fact in light of the available evidence, the decision is one of law for the trial judge or for an appellate court.

*Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314 (brackets, citations, and internal quotation marks omitted).

¶44   Here, IntegraCore and iDrive both filed motions for partial summary judgment, each claiming that the other had breached the Agreement. The district court made clear that "[t]he question of causation in connection with damages was not ruled on" and that "[c]ausation needs to be proven along with damages at trial." Therefore, our analysis is limited to the Agreement and whether it can be said that the terms were performed as a matter of law.

A.    iDrive's Motion Regarding Breach Arising from the October 2011 UPS Agreement

¶45   iDrive's initial motion was quite focused. iDrive sought partial summary judgment on its claim that IntegraCore had breached the Agreement by entering into the October 2011 UPS agreement. The district court concluded that, under the Agreement, IntegraCore "is precluded from entering into any agreement with any carrier without [iDrive's] knowledge, review and input[.]" Accordingly, the district court first determined that IntegraCore breached the Agreement by negotiating and entering into the October 2011 carrier contract with UPS in secret. Secondly, the court also determined that IntegraCore breached the Agreement by failing to remit thirty-eight percent of the savings that had been realized by entering into the new contract.

¶46   In addition to raising the contract-interpretation argument as outlined above, which we reject, *supra* Part I, IntegraCore also raised other defenses. IntegraCore asserted that iDrive had failed to perform and therefore was precluded from

claiming breach. "[P]erformance by the party seeking recovery" is an essential element for a breach of contract claim. *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. As part of its failure-to-perform assertion, IntegraCore maintained that iDrive's time to perform had expired. The district court rejected these defenses and we examine these conclusions in five parts.

¶47　First, we examine the district court's conclusion that "iDrive had either performed, or was in the process of performing, as required by the terms of [the Agreement]." Second, we review the district court's conclusion that, since the contract did not provide that time was of the essence, IntegraCore could not raise a timeliness defense. Third, we review the district court's determination that, if IntegraCore had believed that iDrive was in breach, IntegraCore could not claim a breach until a demand for performance had been made. Fourth, we analyze the district court's conclusion that IntegraCore's defense of nonperformance was lost by continuing to accept ongoing partial performance. And fifth, we examine other arguments IntegraCore made in relation to iDrive's summary judgment motion on iDrive's claim that warrant discussion.

### 1.　The District Court's Determination That iDrive Performed or Was in the Process of Performing

¶48　As noted above, the Agreement provides certain obligations that iDrive is required to perform, including issuing RFPs to carriers, spending two days with IntegraCore learning its procedures, negotiating with carriers, and providing auditing services. *Supra* ¶ 6. We note here that the facts argued in conjunction with these obligations are material facts because they are essential to determine whether obligations are performed in a claim for breach of contract.[9] *See Alliant*

---

9. This is not to say that any disputed fact that is determinative of iDrive's performance of some obligation under the Agreement

(continued…)

*Techsystems, Inc. v. Salt Lake County Board of Equalization*, 2012 UT 4, ¶ 31, 270 P.3d 441 ("A disputed fact is material if it affects the rights or liabilities of the parties." (citation and internal quotation marks omitted)); *Bair*, 2001 UT 20, ¶ 14 (noting that "performance by the party seeking recovery" and "breach of the contract by the other party" are elements of a breach of contract claim).

¶49    First, whether iDrive issued any RFPs to any carriers is a disputed fact. IntegraCore argues that iDrive never issued any RFPs to any carriers, noting specifically the UPS representative's testimony that she never received an RFP from anyone on behalf of IntegraCore, and that the email she received from iDrive President could not be characterized as an RFP but was instead "a request for incentive changes." This testimony alone made this issue a disputed one. *See Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 752 (Utah Ct. App. 1988) ("One sworn statement under oath is all that is needed to dispute the averments on the other side of the controversy and create an issue of fact, precluding the entry of summary judgment."). The UPS representative

---

(…continued)
is necessarily a material breach of the Agreement. *See Cross v. Olsen*, 2013 UT App 135, ¶ 27, 303 P.3d 1030 ("A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement." (citation and internal quotation marks omitted)). Further, to conclude on summary judgment that any particular failure to perform constitutes a material breach is also problematic because it is a question of fact that is generally resolved by a factfinder. *See id.* ¶ 29 ("Whether a breach of a contract constitutes a material breach is a question of fact . . . . Therefore, the issue will ordinarily be resolved by the fact finder, and summary judgment should be granted with great caution." (brackets, citations, and internal quotation marks omitted)).

acknowledged that the email from iDrive President was a request for improvements on UPS pricing for IntegraCore and specifically asked for a proposal in response to that request, essentially saying that the request was the functional equivalent of an RFP.[10] This testimony is conflicting and it cannot be said that "reasonable jurors, properly instructed, would be able to come to only one conclusion" regarding whether an RFP was issued. *See Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314 (citation and internal quotation marks omitted). Therefore, whether iDrive performed this obligation is a disputed material fact, which should have precluded summary judgment.

¶50    Similarly, the district court erred under the summary judgment standard when it concluded that the undisputed facts showed that iDrive performed its obligation to ensure iDrive President, in his capacity as IntegraCore's vice president of logistics, conducted the required visits. The Agreement required iDrive President to initially visit for two days to learn IntegraCore's operations and to make two additional visits to IntegraCore over the following two quarters from the date the Agreement was executed. It is undisputed that iDrive President spent two days at IntegraCore. It is also undisputed that iDrive President did not visit IntegraCore again. However, iDrive argues that it "acquiesced" to IntegraCore's request that iDrive CEO be the primary contact between IntegraCore and iDrive. And it is undisputed that iDrive, through iDrive CEO, had "several in-person meetings with [Director of Logistics], including some that took place at IntegraCore's facility."

¶51    Viewing these facts and reasonable inferences in a light favorable to IntegraCore, we conclude that a reasonable juror

---

10. Also, the FedEx representative testified that an RFP can be very simple and "can come in the form of any mode of communication."

could consider the facts here and determine that because iDrive President did not make the visits, iDrive failed to perform this term of the contract. The district court's finding that someone from iDrive "made visits" and that "the purposes of the additional visits were fulfilled" does not comport with long-established standards on summary judgment. All of the factual disputes related to this question should have been construed against iDrive and in favor of IntegraCore. In reality, the district court made factual findings on materiality and substantial performance that it should not have made. At a minimum, the district court failed to construe the factual disputes against iDrive.

¶52  Next, it is unclear whether iDrive's direct contact with carriers fulfilled its obligation to "negotiat[e] pricing, terms and conditions" with them. While there is undisputed evidence showing communications between iDrive President, on behalf of IntegraCore, and both UPS and FedEx discussing pricing on carrier contracts, IntegraCore has presented evidence from the UPS representative that she never negotiated with anyone. IntegraCore further contends that iDrive's last attempt to communicate with carriers was in May 2011, which arguably shows a lack of effort. And while iDrive's lack of effort may have been completely justified, based on carrier responses or working through IntegraCore's own employees who contacted carriers, concluding that iDrive fulfilled its obligation to negotiate with carriers as a matter of law involved weighing facts to come to a firm conclusion.[11] These facts show a dispute as to whether

---

11. The parties disagree whether the Agreement permitted Director of Logistics to "run point" on and be the main contact for negotiations with carriers, and whether IntegraCore properly asserts admissions made by iDrive as part of a dismissed fraud claim. We need not decide the merits of these arguments to settle the questions on appeal but reference them only to demonstrate that Director of Logistics's request to take the lead in

(continued…)

iDrive negotiated with carriers pursuant to the Agreement, and we cannot say that "reasonable jurors, properly instructed, would be able to come to only one conclusion." *See Heslop*, 2017 UT 5, ¶ 20 (citation and internal quotation marks omitted). Therefore, whether iDrive negotiated pricing, terms, and conditions with carriers is a disputed material fact.

¶53    Thus, the rulings of the district court based on the determinations above were in error because material issues of fact precluded the entry of partial summary judgment.

2.    The District Court's Determination That IntegraCore Cannot Raise a Timeliness Defense

¶54    The district court also ruled that, because there is no specific time mentioned in the Agreement by which iDrive was required to perform, iDrive could not have breached the Agreement unless IntegraCore demanded performance. This analysis fails for two reasons. First, the Agreement does contain a time requirement as it pertains to one obligation. The Agreement states that, in addition to spending two days learning current logistics practices and operations at IntegraCore, iDrive President (or a mutually agreed upon person) was required to conduct two additional visits "*over the next 2 quarters.*" (Emphasis added.) The Agreement was signed by iDrive President on January 13, 2011. As a result, the two additional visits should have occurred sometime in 2011. If anything, the evidence appears to be undisputed that the two additional visits

_____

(…continued)

negotiations, that iDrive's communications to Director of Logistics on the progress with carriers, and that IntegraCore's testimony that Director of Logistics was not qualified to negotiate with carriers, are other examples of disputed facts about whether iDrive performed under the Agreement, which should have precluded summary judgment.

did not happen within the required timeframe. At a minimum, performance on this issue is disputed.

¶55   Second, the fact that there is no time specified when performance was to be completed does not itself mean that the conflict at hand can be summarily dismissed. "[T]he settled rule is that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances." *New York Avenue LLC v. Harrison*, 2016 UT App 240, ¶ 32, 391 P.3d 268 (citation and internal quotation marks omitted). Even assuming IntegraCore was required to make a demand for performance, the court still would have needed to determine that iDrive could perform within a reasonable time. "And because what constitutes a reasonable time is necessarily a fact-intensive question," we conclude that "the district court erred in granting summary judgment." *See id.* ¶ 35 (brackets, citation, and internal quotation marks omitted).

3.   The District Court's Determination That No Breach May Occur Where No Demand for Performance Was Made

¶56   The district court further concluded that, because there was no provision in the Agreement stating a date by which iDrive must perform, IntegraCore was "obligated to provide notice to [iDrive]" of its belief that the time for performance had passed to "allow a reasonable time for performance before unilaterally deciding to consider [the Agreement] void." In support of its conclusion, the district court cited principles articulated in *Gammon v. Bunnell*, 64 P. 958 (Utah 1900). However, the language relied on by the district court is dicta and the case is distinguishable and does not apply to iDrive's burden on its own claims.

¶57   *Gammon* involved a contract for the sale of real property. *Id.* at 958. The plaintiff/purchaser paid the title holder $1 and took possession of the land. *Id.* The deed was placed in escrow with an escrow instruction that upon the grantor's death $300

would be paid to grantor's designee. *Id.* The escrow instructions then provided that the designee would deliver a receipt and when that receipt was presented to the escrow agent, the deed would be released by the escrow agent to the purchaser. *Id.* A fine plan indeed, except that when the $300 was tendered to the designee, she rejected the tender and refused to give a receipt. *See id.* at 959. The purchaser sued for quiet title in addition to other relief not identified by the *Gammon* court. *Id.* at 958–59.

¶58 The question presented was whether the purchaser's complaint stated a claim upon which relief could be granted. *Id.* at 959. The *Gammon* court held that the purchaser's complaint did state a claim, that the purpose of the escrow was to ensure the designee was paid, and that, when the tender was made, the purchaser had a right to the deed. *Id.* When discussing the general duties of an escrow agent, in dicta the *Gammon* court stated, "If no date is fixed for the delivery or performance of the contract, a reasonable time is intended, and no default can attach until after a demand and failure or refusal to perform." *Id.* There is, however, no reference to any assertion that the purchaser did not act with all diligence. Therefore, this statement made in passing does not constitute the holding in *Gammon* and the decision is not applicable here. Further, *Gammon* is distinguishable as it pertained to an escrow arrangement and concerned a real property transaction, not a general contract such as in this case.[12]

---

12. iDrive points us to sister state authorities for similar propositions. Yet these cases actually undermine iDrive's position. These cases are distinguishable for the same reason as *Gammon*—they explicitly state their holdings apply to real estate transactions. For example, in *ADC Orange, Inc. v. Coyote Acres, Inc.*, 857 N.E.2d 513 (N.Y. Ct. App. 2006), the court applied its analysis to "contracts of this type" and "contracts of this kind," meaning contracts for the sale of real property. *Id.* at 514, 516.

(continued…)

¶59 Moreover, and most importantly, on its own claims, iDrive bears the burden of showing it performed under the Agreement to succeed on its breach of contract claim. *See Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. iDrive cannot hide behind the dicta of *Gammon* and claim that iDrive is relieved of proving an element of its claim because IntegraCore did not demand performance. As a result, *Gammon* does not control, and consequently, we are left with the fact question of whether a reasonable period had passed wherein iDrive should have performed. This is an issue that should be left to a factfinder and partial summary judgment should not have been based thereon. *See New York Avenue*, 2016 UT App 240, ¶ 35.

---

(…continued)

The court held, consistent with *New York Avenue LLC v. Harrison*, 2016 UT App 240, ¶ 32, 391 P.3d 268, that performance must occur within a reasonable time (a fact question) or if a party wishes to impose a certain date by which performance must occur, then demand must be made—not that no breach occurs if no demand for performance has been made. *See ADC Orange*, 857 N.E.2d at 516. Similarly, in *Command Security Corp. v. Moffa*, 84 So. 3d 1097 (Fla. Dist. Ct. App. 2012), also involving the limited circumstances of a real estate escrow transaction, the court held, again consistent with *New York Avenue*, that where a contract does not make time of the essence the parties would have a reasonable time to perform. *See id.* at 1099. The *Moffa* court explained that time can be of the essence when it is expressly called for in the contract, or in a number of other circumstances, including where express notice is given to the alleged defaulting party. But again, that is not the question which is presented in this case. Instead, a fact question remains about whether iDrive's efforts, whatever they may or may not have been, were undertaken within a reasonable time.

4.     The District Court's Determination That IntegraCore Is Barred from Asserting a Defense of Nonperformance

¶60     IntegraCore challenges the district court's ruling that IntegraCore was barred from asserting that it was excused from performance under the Agreement. The district court ruled, "The fact that [IntegraCore] continued to accept [iDrive's] performance under [the Agreement], long after [IntegraCore] now asserts it had a known excuse for nonperformance, bars [IntegraCore] from asserting a breach of contract by [iDrive.]" The district court relied on *H.B. Zachry Co. v. Travelers Indemnity Co.*, 391 F.2d 43 (5th Cir. 1968), which states, "When the promisor on a contract not already fully performed on either side continues his performance in spite of a known excuse for nonperformance, he loses his defense of nonperformance." *Id.* at 48.

¶61     IntegraCore argues that the district court erred because (1) waiver is a fact-based question and generally inappropriate on summary judgment, and (2) the Agreement is divisible and the shipping and auditing services that continued long after IntegraCore asserted the Agreement was breached are "not at issue."

¶62     First, it is true that "[w]aiver is an intensely fact dependent question." *McCleve Props., LLC v. D. Ray Hult Family Ltd. P'ship*, 2013 UT App 185, ¶ 9, 307 P.3d 650 (citation and internal quotation marks omitted). However, summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). IntegraCore does not dispute that it continued to accept auditing services from iDrive under the Agreement. Therefore, this fact, which the district court relied on to determine that IntegraCore continued to accept the benefit of the Agreement after it now claims the Agreement was breached, is not disputed. Because the facts surrounding IntegraCore's continued acceptance of iDrive's

services are undisputed, the general contention that summary judgment is usually inappropriate for fact intensive questions is not enough to demonstrate that the district court erred.

¶63    Instead of challenging the facts showing IntegraCore's continued acceptance of performance under the Agreement, IntegraCore argues that the facts relied upon by the district court should not have been considered because the Agreement is divisible. Although IntegraCore argued to the district court that "the audit services are separate from the pricing optimization services," the district court did not rule on whether the Agreement is divisible. "Whether a contract is divisible depends on the intent of the parties at the time they entered the contract." *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.*, 844 P.2d 322, 328 (Utah 1992). "A divisible contract is in legal effect, independent agreements about different subjects though made at the same time." *In re Payless Cashways*, 203 F.3d 1081, 1085 (8th Cir. 2000) (citation and internal quotation marks omitted). If the Agreement is divisible, as IntegraCore argues, IntegraCore could maintain that its acceptance of auditing and shipping services do not show that it treated iDrive as though no breach had occurred under the pricing optimization services provision, as the district court concluded. *See Prospero Assocs. v. Burroughs Corp.*, 714 F.2d 1022, 1026 (10th Cir. 1983) (examining divisibility to determine whether the breach of different provisions in a contract gave rise to distinct claims). Because the district court did not address whether the Agreement is divisible, we remand the issue to the district court.

¶64    Additionally, "[o]nly a material breach will excuse further performance by the non-breaching party." *Cross v. Olsen*, 2013 UT App 135, ¶ 26, 303 P.3d 1030. "Whether a breach of a contract constitutes a material breach is a question of fact . . . . Therefore, the issue will ordinarily be resolved by the factfinder, and summary judgment should be granted with great caution." *Id.* ¶ 29 (brackets, citations, and internal quotation marks omitted).

¶65   By concluding that IntegraCore may not assert a defense of nonperformance, the district court essentially concluded that, even if iDrive breached under the optimization services provision, that breach was "not so substantial and fundamental as to defeat the object of the parties in making the agreement." *See id.* ¶ 28 (citation and internal quotation marks omitted). But to reach such a conclusion the district court impermissibly construed the facts against IntegraCore and made a factual finding on materiality. Because the district court "appears not to have examined the issue through the lens of the foregoing standards," the district court "erred in granting summary judgment on the factual question of material breach." *See id.* ¶ 30. Consequently, we also remand this issue to the district court.

5.      IntegraCore's Additional Arguments

¶66   We next discuss two remaining contentions: (1) IntegraCore's additional claims of breach by iDrive that the district court did not address and (2) the district court's ruling that, despite IntegraCore's argument otherwise, iDrive owed fiduciary duties to IntegraCore in fulfilling its contractual obligations.

¶67   First, IntegraCore claims additional breaches by iDrive that the district court did not address. IntegraCore claims that besides UPS and FedEx, iDrive never contacted any other carriers, including USPS and DHL, both of which were explicitly identified in the Agreement. Additionally, IntegraCore asserts that iDrive ceased contacting both UPS and FedEx in the spring of 2011. Thus, at a minimum there appears to be a disputed fact whether iDrive performed, or was in the process of performing, under the Agreement. As to each and every claim of breach by either iDrive or IntegraCore, assuming the breach exists, there remains a fact question as to whether each breach was material—an intensely fact-based question typically submitted to a factfinder. *See Cross*, 2013 UT App 135, ¶ 29.

¶68    Second, IntegraCore argued to the district court that iDrive, whose designee served as vice president of logistics for IntegraCore and as an "agent" as stated in the Agreement, owed IntegraCore fiduciary duties in fulfilling its obligations under the Agreement. The district court did not include any ruling on this point in its original orders, but did state in its ruling and clarification on IntegraCore's objection to the orders that "[t]he Court noted at oral argument . . . that iDrive did not owe IntegraCore fiduciary duties. . . . While an officer or director of a corporation may owe fiduciary duties to that corporation, iDrive's obligations to IntegraCore are limited to those enumerated in the Agreement." We are directed to no further analysis of this issue in the district court's written rulings or in the transcript at oral argument.

¶69    As noted, the original orders granting summary judgment were silent on the issue of potential fiduciary duties. Nevertheless, in its clarifying ruling, the district court did state that no fiduciary duty exists. The district court in no way indicated how the existence or nonexistence of fiduciary duties would have altered its analysis on the ultimate issues before it on partial summary judgment. And because we perceive that this issue may arise on remand at trial or in further motion practice, we choose to address the issue here. *See State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867.

¶70    Although the analysis is meager, the district court appears to have concluded that the mere existence of a contract between the parties precluded the possibility that fiduciary duties existed. However, as acknowledged in *Orlando Millenia, LC v. United Title Services of Utah, Inc.*, 2015 UT 55, 355 P.3d 965, contractual duties might be supplemented by fiduciary duties. *See id.* ¶ 40 n.5. Officers of a company may owe fiduciary duties to the entity they serve. *See Stevensen 3rd East, LC v. Watts*, 2009 UT App 137, ¶ 32, 210 P.3d 977. Likewise, agents may owe a fiduciary duty to their principals. *See Eagar v. Burrows*, 2008 UT 42, ¶ 25, 191 P.3d 9. Given our supreme court's recognition in *Orlando* that

contractual duties might coexist with fiduciary duties, the bare analysis of the district court here was insufficient. To the extent that the district court's analysis relies upon this faulty premise, the district court is reversed, and the issue of the existence of a fiduciary duty and its application in this case is remanded for a more thorough consideration by the district court.

B.      IntegraCore's Motion for Partial Summary Judgment on iDrive's Breach of Contract Claim

¶71     We similarly conclude that IntegraCore was not entitled to summary judgment on iDrive's breach of contract claim. IntegraCore's motion involves the same facts analyzed above, but on IntegraCore's motion we instead view all facts and inferences in a light most favorable to iDrive—the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

¶72     We cannot say that a reasonable juror could not conclude that iDrive submitted an RFP to UPS. As explained above, even though the UPS representative said she never received an RFP, so denominated, from iDrive, the UPS representative also said that she received a request from iDrive President asking that IntegraCore's contracts be evaluated and requesting that she respond with a proposal. *Supra* ¶ 15. A reasonable juror could conclude that, despite its apparent informality, iDrive President sent UPS an RFP. Therefore, this fact is disputed and precludes summary judgment on IntegraCore's motion. *See Heslop*, 2017 UT 5, ¶ 20.

¶73     Likewise, a reasonable juror could conclude that iDrive fulfilled its contractual obligation to spend two additional days at IntegraCore. Although iDrive President made no additional visits himself, iDrive CEO visited multiple times in iDrive President's place, apparently at IntegraCore's insistence. Because "reasonable jurors, properly instructed," could not "come to only one conclusion" here, *see id.* (citation and internal quotation

marks omitted), IntegraCore was not entitled to summary judgment on this issue.

¶74    Next, whether iDrive negotiated pricing, terms, and conditions with carriers is a disputed material fact that precludes summary judgment on IntegraCore's motion. There is undisputed evidence showing communications between iDrive President, on behalf of IntegraCore, and both UPS and FedEx that discuss pricing on carrier contracts. Even recognizing IntegraCore's arguments and evidence to the contrary, while viewing the facts in the most favorable light to iDrive, we conclude that "reasonable jurors, properly instructed, . . . might come to different conclusions, thereby making summary judgment inappropriate." *See id.* (citation and internal quotation marks omitted).

¶75    Finally, we conclude here, as we did above, that the absence of a specified time for performance in the Agreement makes the question of performance unsuitable for summary judgment. *Supra* ¶ 59. Even if iDrive had not performed any of its obligations, the lack of a contracted time for performance must be "reasonable . . . under the circumstances." *New York Ave. LLC v. Harrison*, 2016 UT App 240, ¶ 32, 391 P.3d 268. "[B]ecause what constitutes a reasonable time is necessarily a fact-intensive question," *id.* ¶ 35 (brackets, citation, and internal quotation marks omitted), and because "reasonable jurors . . . might come to different conclusions," *see Heslop*, 2017 UT 5, ¶ 20 (citation and internal quotation marks omitted), we conclude that the district court properly denied IntegraCore's motion.

C.    IntegraCore's Motion for Partial Summary Judgment on the USPS Account

¶76    As part of its motion for partial summary judgment, IntegraCore argued that iDrive's contract claims with respect to IntegraCore's use of Move Method's USPS account failed as a matter of law. The USPS contract claims were not included in the

district court's original orders. In its ruling on IntegraCore's objection to the orders the district court said, "IntegraCore's motion for summary judgment was denied, effectively preserving the [USPS contract] issue for future litigation and trial." On appeal, iDrive asserts, as the district court observed, that "iDrive did not move for summary judgment regarding its USPS-related claims." That is not the point. While it is true iDrive did not move for summary judgment regarding its USPS claims, IntegraCore did. IntegraCore's initial motion identified a number of ways that IntegraCore claimed iDrive's breach of contract claim failed as a matter of law. Among those reasons, clearly identified, was that "iDrive's claim that IntegraCore breached the contract at issue by switching its [USPS] account from iDrive to a new broker fails as a matter of law because the contract at issue does not require IntegraCore to use iDrive's USPS account." Accordingly, the issue of the USPS account was squarely before the district court. Although the district court's lack of analysis on this issue is troubling, we nevertheless affirm the denial of summary judgment. "When reviewing a decision made on one ground, we have the discretion to affirm the judgment on an alternative ground if it is apparent in the record." *Madsen v. Washington Mutual Bank FSB*, 2008 UT 69, ¶ 26, 199 P.3d 898 (emphasis omitted).

¶77 IntegraCore argues that it is entitled to summary judgment on this issue because iDrive's USPS claim "is not supported by the terms of the Agreement."[13] While it is true there is no provision that says IntegraCore must use the USPS

---

13. IntegraCore goes on to argue several other theories to challenge the district court's denial of summary judgment on iDrive's USPS contract claims. Those theories are based on the premise that iDrive would need to prove an oral modification of the contract for the claim to survive. Because we affirm the district court's denial without presuming an oral modification to the contract, we do not reach those arguments.

service, the Agreement also states that "[a]ll significant logistics decisions will flow through iDRIVE for review." iDrive alleges, and IntegraCore does not dispute, that IntegraCore incrementally diminished its use of iDrive's USPS account in favor of another broker's USPS account during the term of the Agreement and without notifying iDrive. At the very least, it is an open question whether IntegraCore's switch to another broker account for its USPS shipments constitutes a "significant logistical decision[]"; there is no provision requiring IntegraCore to use iDrive's USPS account and Move Method is not a "carrier" as defined in the Agreement, but choosing which broker account to use is a logistical decision that, as iDrive argues, potentially affects savings. Because reasonable jurors, properly instructed, could conclude that such a change is a significant logistical decision requiring iDrive's involvement, summary judgment was inappropriate. *See Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314. Therefore, we affirm the district court's denial of this motion.

D.    Summary Judgment on IntegraCore's Breach of Contract Claim[14]

¶78    The district court granted summary judgment in favor of iDrive on IntegraCore's counterclaim for breach of contract. First, the court ruled that based upon its reasoning in its ruling in favor of iDrive on its principal claims, the same reasoning would apply to entitle iDrive to partial summary judgment on IntegraCore's counterclaims. The district court's analysis did not end there. The district court also ruled for an "independent reason" that, under the first to breach rule, iDrive was relieved

---

14. Again, in the second order, the district court made no distinction and provided no separate analysis between the breach of contract and breach of the covenant of good faith and fair dealing. We therefore treat them as combined or redundant in this decision. *See supra* ¶ 22 note 5.

of the obligation to perform. As a third basis upon which to grant partial summary judgment, the district court stated:

> Finally, [the Agreement] . . . expressly and unambiguously precludes [IntegraCore] from asserting contract-based claims for damages against [iDrive]:
>
>> Notwithstanding anything else in this Agreement or otherwise, iDRIVE will not be liable with respect to any subject matter of this Agreement under any contract, negligence, strict liability or other legal or equitable theory (1) for any amounts . . . .
>
> The Court finds that the language in the liability limitation is unambiguous and bars [IntegraCore's] counterclaims for breach of contract and breach of the covenant of good faith and fair dealing in this case.

¶79    IntegraCore completely ignores this exculpatory clause of the Agreement, which was expressly the basis of the district court's conclusion. Surprisingly, iDrive also does not mention the exculpatory provision or the court's reliance thereon in its brief. Where an appellant fails to address the basis of the district court's ruling, we reject the challenge. *Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375. Therefore, we affirm the district court's grant of partial summary judgment on IntegraCore's counterclaim for breach of contract in favor of iDrive.

## CONCLUSION

¶80    For the foregoing reasons, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion. We see no error in the district court's interpretation of

the Agreement and affirm the district court's ruling in that regard. However, the district court erred in granting partial summary judgment in favor of iDrive on its claim that IntegraCore breached the Agreement because disputed material facts exist regarding the question of performance. Likewise, we conclude that IntegraCore was not entitled to summary judgment on iDrive's breach of contract claim. Further, we affirm the district court's denial of IntegraCore's motion for partial summary judgment on iDrive's claims in regard to the USPS shipping account because reasonable jurors could conclude that IntegraCore's actions amounted to a significant logistical decision that required iDrive's input. Finally, because IntegraCore failed to address the district court's ruling based on the exculpatory clause of the Agreement, we affirm the court's grant of partial summary judgment in favor of iDrive on IntegraCore's counterclaim. We remand to the district court for further proceedings consistent with this opinion.

_____